J. S. BRADLEY, Administrator of Sarah J. Kanipe v. THE OHIO RIVER & CHARLESTON RAILROAD COMPANY.

(Decided April 26, 1898).

*Action for Damages for Injury Resulting in Death— Measure of Damages—Trial.*

Since by *The Code* (Sections 1499 and 1500) only such damages are allowed "as are a fair and just compensation for the pecuniary injury resulting from the death" of a person killed by the wrongful act of another, the measure of damages for the wrongful killing of a mother of children is the value of her labor or the amount of her earnings if she had lived out her expectancy, without regard to the number of her children and the intellectual and moral training she might have given them.

CIVIL ACTION to recover damages for the negligent killing of the plaintiff's intestate, tried before *Hoke, J.*, and a jury at Spring Term, 1897, of McDOWELL Superior Court. Among many other exceptions taken on the trial, the defendant excepted to the admission of evidence as to the number and ages of the children of the deceased and to the instruction of his Honor in relation to the measure of damages. The jury rendered a verdict for the plaintiff, fixing the damages at $10,000 and from the judgment thereon the defendant appealed.

*Messrs. E. J. Justice* and *S. J. Ervin* for plaintiff.
*Messrs. B. J. Sinclair* and *Locke Craig* for defendant (appellant).

FAIRCLOTH, C. J.: This is an action for damages in killing plaintiff's intestate by the alleged negligence of the defendant. The evidence discloses that the de-

fendant was backing its train on to a crossing at the speed of three or four miles an hour, and that the hack driver, carrying plaintiff's intestate, came in view of the backing train in time to have stopped and avoided the collision, but thinking and saying he could "make it" he rushed his horse to a high speed but failed to make it, and the intestate was killed.

The action was against the driver and the defendant company. The jury brought in a verdict finding the company guilty of negligence, but the driver not guilty of negligence.

We have examined the record of this case and find that we must order a new trial for error in the admission of evidence of the number and age of intestate's children, etc. This is the defendant's third exception and relates to the measure of damages. No damages could be recovered at common law for killing another, because it was a personal injury and the remedy was lost by the death, and the remedy did not survive. The remedy in England and in this country is given by statute. In the former, the rule of damages was "the reasonable expectation of pecuniary advantage from the continuance of the life of the deceased." The English statute required the jury to apportion the damages among the beneficiaries as therein provided, and that made it necessary to take proof of the number, names, ages, etc., of the children. Our statute (*Code*, Section 1499) allows only such damages as "are a fair and just compensation for the *pecuniary* injury resulting from the death," and the amount recovered is distributed in the same manner as personal property in case of intestacy. *Code*, Section 1500. It will be observed that under our Statute the *pecuniary injury* is the measure. That means the value of the labor or the amount

of the earnings of the deceased if he had lived, without regard to the number of the recipients of his labor, and the jury in arriving at such value are allowed to know by proofs whether he was an industrious or an idle man—honest or dishonest—drinking or sober man, and the like; and in that way the jury worked out the pecuniary damage sustained by the family. Nothing is allowed as a punishment to the defendant, nor as a solace to the plaintiff. The few decisions in our State will be found in *Collier* v. *Arrington,* 61 N. C., 356; *Kesler* v. *Smith,* 66 N. C., 154; *Burton* v. *Railroad,* 82 N. C., 504.

His Honor instructed the jury: "You can consider the number of her infant children and their ages, only so far as that shows the jury her opportunity for effort and helps them to put a pecuniary value on the intellectual and moral training that she might be able to give them while they were infants and under her care. You will not allow anything to console these children for the great grief that they suffer in the loss of their mother." This would be so, if the necessities of the family, and not the value of the life of the deceased were the rule. See cases *supra.* Besides, that view would tend to violate the rule above stated, *i. e.,* it would furnish a motive to the jury to allow damages beyond the value of the decedent's life as an industrious or idle parent.

We must therefore order another trial, and we think this a proper case to allow the whole matter to be retried.

New trial.

DOUGLAS, J., concurring: While I concur in the judgment of the court that there must be a new trial for the misdirection of his Honor on the issue of dam-

ages, I do not see why the testimony as to the number of the children of the deceased might not be competent in one aspect, to show the value of her material services. His Honor instructed the jury: "You can consider the number of her infant children and their ages only so far as that shows the jury her opportunity for effort, and helps them to put a pecuniary value on the *intellectual* and *moral training* that she might be able to give them while they were infants and under her care. This was clearly error, on account of the impossibility of adopting any adequate standard for the measurement of the *pecuniary* value of such training.

If by intellectual training was meant her capacity to impart to them the ordinary instruction given to children, and thus save the expense of sending them to school, it might be competent under the proper restriction; but it is entirely too general as given. *Moral* training is still further beyond the reach of human calculation, as it is infinite in its tendencies and may be so in its results  The law will not attempt to give compensation for such a loss, not because it is not real and substantial, but because it is irreparable and incalculable.   We have no scales by which to measure the value of a pure christian mother, and the moral influence she may have upon her children.   But her capacity to minister to their material wants can be determined, and adequate compensation given in pecuniary damages.   If she was able to feed, clothe and shelter a large family of children by her own industry, to cook and wash for them and make their garments, I do not see why these facts, if they are facts, would not be competent evidence of her earning capacity. If she did that for which she would otherwise have been compelled to pay, she earned that money by saving it just as much as she

would have done had it been paid to her. The compensation of all employees is graded by the amount and value of the services they render. A seamstress who can make two garments in a day is worth twice as much as she who can make but one; and the cook who can properly prepare meals for a large family is worth much more than one who is never ready, and whose work is never finished. What a woman has done is the best criterion of what she can do. This is not upon the theory that the value of her services is multiplied by the wants of her children, but upon the idea that, if she could supply the temporal wants of six children, she could provide twice as well for three. What might support six lives would be abundance for them, and give them perhaps some little luxuries. In such cases the court should carefully instruct the jury for what purpose this evidence was admitted, and that it could be considered only in determining the net pecuniary value of the services of the deceased, irrespective of the number of the beneficiaries among whom such services might have been divided.

It is urged in behalf of the defendant that such evidence might prejudice the jury, and cause them to render a verdict in accordance with their sympathies and contrary to their judgment and their oath. I can only say that the jury are an inherent part of the court, to whose honesty and intelligence is committed the determination of such questions of immemorial usage and express constitutional mandate. Peculiarly representing the body of the people—the country—they surely would have sense enough to know that their duty was to measure out equal and exact justice and not generosity, and integrity enough to feel that they could put their hands in their own pockets to relieve the wants of

the poor, but must not touch with an unlawful hand what belonged to another. If they should render a dishonest verdict surely the court could be trusted to set it aside. I think that the error consisted not in the mere admission of the evidence, but in the erroneous instruction of his Honor as to the purpose for which it might be considered.