## ISRAEL SHERMAN, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

**St. Louis Court of Appeals. Opinion Filed June 19, 1919.**

1. **APPELLATE PRACTICE:** Demurrer to the Evidence: Evidence of Defendant: Review. Where defendant *did not stand upon its demurrer, but offered testimony,* the demurrer to the evidence is to be adjudged in the light of all the evidence in the case, giving plaintiff the benefit of testimony favorable to him, if any, adduced by defendant.

2. **STREET RAILROADS:** Negligence: Injuries on Track: Last Chance Doctrine: Evidence. In an action to recover damages for the death of plaintiff's wife who ran in front of a street car in attempting to cross the street to rescue her child, evidence reviewed and *held* to warrant a finding that the motorman, by the exercise of ordinary care, could have stopped the car and avoided injury to deceased after she came within the danger zone.

3. **NEGLIGENCE:** Proximate Cause of Injury: Rescue Case. If a fellow being is put in peril of life or limb through the negligence of another, such negligence is *held* to be the proximate cause of injury to one who is injured in an attempt to rescue the person thus in danger.

4. **STREET RAILROADS:** Negligence: Injuries on Track: Contributory Negligence: Wanton Injury. Where the evidence shows that a child was not only within the danger zone but was closely approaching the track upon which a street car continued to proceed forward, and that under such circumstances the mother rushed out into the street in an effort to save her child, and thus came upon the track, it relieves her of contributory negligence (if that be involved), and makes the case one wherein a recovery may not be denied on the ground that the deceased knowingly and wilfully or wantonly placed herself in front of a moving car.

. 5. ———: ———: ———: **Last Chance Doctrine: Case for the Jury.**
In an action for damages for the death of plaintiff's wife who ran
in front of a street car in attempting to cross the street to rescue
her child, evidence *held* to establish, prima facie, a right of re-
covery, and that the case was one for the jury.

6. **DEATH BY WRONGFUL ACT: Death of Wife: Value of Life of
Wife: Loss of Services: Evidence.** In an action for damages for
the death of plaintiff's wife, testimony is competent to show the
number and ages of minor children and by this means to show
the value to plaintiff of the life of the deceased wife whose serv-
ices plaintiff has lost; . such evidence is not admitted upon the
theory that the damages are to be measured by the needs of the
family, but upon the theory that proof that the wife was able
to care for, and did administer to the wants of several minor
children, casts light upon the value of her services as plaintiff's
wife, and may be considered in determining the extent of the loss
suffered by plaintiff.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. James E. Withrow,* Judge.

AFFIRMED.

*T. E. Francis, R. E. Blodgett* and *Chauncey H.
Clarke* for appellant.

(1) The court erred in refusing to give the jury
an instruction in the nature of a demurrer to the evi-
dence, requested by defendant, for the reason that plain-
tiff made no showing which entitled him to have the
case submitted to the jury on any theory of negligence
pleaded in the .petition. The evidence did not war-
rant a recovery under the theory of secondary negligence
or the "last chance" doctrine, for the reason that
there was no showing made that such alleged negligence
was the proximate cause of the collision. (a) There
was no showing made that the car could have been
stopped in time to have averted the collision, traveling
at the speed it was, after plaintiff entered the "danger
zone," that is, got within two or three steps of the
track. Kinlen v. Metropolitan St. Ry. Co., 216 Mo. 145,
164; Keele v. Atchison, etc. R. Co., 258 Mo. 62, 79;
Baecker v. Mo. Pac. Railroad, 240 Mo. 507, 521; Hamil-
ton v. Railroad, 250 Mo. 714, 722; McGee v. Railroad,
214 Mo. 530, 543. (b) Even if the evidence adduced

by plaintiff was sufficient to show that the motorman, by the exercise of ordinary care, could have stopped the car in time to have averted the collision after the decedent entered the "danger zone," nevertheless plaintiff was not entitled to recover, for the reason that the evidence conclusively shows that decedent knowingly placed herself in a place of danger and knowingly or willfully permitted the car to strike her, and hence the motorman's failure to stop the car in time to avoid the collision was not the proximate cause of decedent's death for the reason that decedent's act in knowingly and willfully going onto the track in front of the car constituted negligence on her part of such kind, character or degree as to constitute it recklessness or wantonness, and under such circumstances her negligence concurred with that of defendant, barring recovery. Moore v. Lindell Ry. Co., 176 Mo. 528, 539, 542; Van Dyke v. Mo. Pac. Ry. Co., 230 Mo. 259, 285; Steele v. Kansas City, etc., Ry. Co., 265 Mo. 97, 110; Kinlen v. Metropolitan St. Ry. Co., 216 Mo. 145, 164; Gettys v. St. Louis Transit Co., 103 Mo. App. 564, 571; Knapp v. Dunham, 195 S. W. 1062; Williamson v. Wabash Ry. Co., 139 Mo. App. 481, 492. Plaintiff was not entitled to recover under either theory of primary negligence pleaded, namely, failure to keep a lookout, failure to give warning, or excessive speed, for the reason that such primary negligence of defendant was not the proximate cause of decedent's death, because it was remote in the claim of causation, for subsequent thereto decedent knowingly ran onto the track in front of the car when she could have stayed off the track and avoided the consequences of defendant's negligence, and hence her intervening negligence was the direct and proximate cause of her death. Moore v. Lindell Ry. Co., 176 Mo. 528, 539, 542; Van Dyke v. Mo. Pac. Ry. Co., 230 Mo. 259, 285; Steele v. Kansas City, etc., Ry. Co., 265 Mo. 97, 110; Kinlen v. Metropolitan St. Ry. Co., 216 Mo. 145, 164; Gettys v. St. Louis Transit Co., 103 Mo. App. 564, 571; Knapp v. Dunham, 195 S. W. 1062; William-

son v. Wabash Ry. Co., 139 Mo. App. 481, 492. (2) The court erred, in admitting, over defendant's objection thereto, plaintiff's testimony that he had four minor children, for the reason that plaintiff's measure of damages was his reasonable pecuniary injury or the reasonable pecuniary value to him of decedent's services, without regard to the number of the recipients of her ·services. Such evidence could have no bearing on the case whatever, lest it be to increase the amount of damages, and hence was prejudicial to defendant' Mc-Namara v. Slavens, 76 Mo. 329, 330; Stephens v. Hannibal & St. Joseph Ry. Co., 96 Mo. 207, 214; Day-harsh v. Hannibal & St. Joseph Ry. Co., 103 Mo. 570, 577; Hecke v. Dunham, 192 S. W. 120, 121; Lynch v. Rosemary Mfg. Co., 167 N. C. 98, 83 S. E. 6, 8; Bradley v. Ohio R. & C. R. Co., 122 N. C. 972, 30 S. E. 8; O'Melia v. K. C., St. Joseph & Council Bluffs R. Co., 115 Mo. 205, 222. (3) The court erred in giving instruction No. 1 on behalf of plaintiff, which hypothesized the alleged ·failure to keep a vigilant watch and directed a verdict for plaintiff if the jury found that the motorman failed to keep such watch, for the reason that such primary negligence was not the proximate cause of the collision, for subsequent to this primary negligence of defendant, decedent's own negligence in knowingly going onto the track in front of the car intervened and was the direct and proximte cause of her death. Moore v. Lindell Ry. Co., 176 Mo. 528, 539, 542; Van Dyke v. Mo. Pac. Ry. Co., 230, 259, 285; Steele v. K. C., etc. Ry. Co., 265 Mo. 97, 110; Kinlen v. Metropolitan St. Ry. Co., 216 Mo. 145, 164; Gettys v. St. Louis Transit Co., 103 Mo. App. 564, 571; Knapp v. Dunham, 195 S. W. 1062; Williamson v. Wabash Ry. Co., 139 Mo. App. 481, 492.

*Holland, Rutledge & Lashly* and *Louis J. Portner* for respondent.

(1) The demurrer to the evidence was properly re-fused. The evidence discloses a clear case of negligence

upon the part of defendant's motorman. Donahue v. Ry. Co., 83 Mo. 560, 563; Clark v. Famous Shoe & Clothing Co., 16 Mo. App. 463; Williams v. U. S. Incandescent Lamp Co., 173 Mo. App. 87; Eversole v. Ry. Co., 249 Mo. 541; Ry. Co. v. Liderman, 187 Ill. 463, 52 L. R. A. 655 (exactly in point); Eckert v. Railway Co., 43 N. Y. 503; Pa. Co. v. Langendorf, 48 Ohio St. 316, 13 L. R. A. 190; Railway Co. v. Orr, 121 Ala. 489; Walters v. Denver Consol. Elec. Co., 12 Colo. App. 145, 150; Gulf Railroad v. Brooks, 132 S. W. 95; International Railway Co. v. McVey, 81 S. W. 991, 998. See cases cited in 27 L. N. S. 1609, et seq., notes; 49 L. R. A. 715, et seq., note. (a) The danger zone for the two-year-old child involved in this case began the instant it left the sidewalk headed for the car track. Cornovski v. Transit Co., 207 Mo. 263; Cytron v. Railroad Co., 205 Mo. 719; Simon v. Railway Co., 231 Mo. 65, 75; Turnbow v. Dunham, 272 Mo. 53, 67. (2) No error was committed in receiving testimony as to the number and ages of the children of plaintiff, where it is shown that deceased was the wife of plaintiff and was living at home, doing all of the housework and caring for and ministering to their minor children. These facts were material, along with all of the other facts tending to demonstrate to the jury the strength, capability, willingness to work and the services habitually performed by the deceased for the plaintiff, from which the jury might deduce and form a judgment as to what her probable service in future would have been had she lived. Lindsey v. Railroad Co., 178 S. W. 280; Boyd v. Railroad Co., 249 Mo. 126; Latimer v. Railway Co., 126 Mo. App. 79, 76-77; Bradley v. Railroad Co., 122 N. C. 972, 974 (concurring opinion). (3) There is no valid complaint due appellant upon the subject of instructions, as the instructions given by the court upon the subject of care and contributory negligence are more favorable than it was entitled to have and imposes a greater burden upon the plaintiff here than is warranted by the "hero doctrine" of law. Eckert v.

Railroad Company, 43 N. Y. 502; Railway Co. v. Liderman, 187 Ill. 463; Donahue v. Railroad Company, 83 Mo. 560. (a) Appellant is not entitled to prosecute any exceptions to instructions given in this case, as there is no specific direction to error in this respect contained in its motion for new trial. Kansas City Trunk Company v. Bush, 208 S. W. 625; State v. Sanders, 271 Mo. 81, 94-95-96; Disinfecting Company v. County, 273 Mo. 300; Wynne v. Undertaking Company, 204 S. W. 15; Lamp v. United Railways Co., 202 S. W. 438; Dairy Co. v. Bottle Company, 204 S. W. 281, 284; Seitz v. Pelligreen, 203 S. W. 503; Nitchman v. United Railways Co., 203 S. W. 491. (4) Upon the whole record it is apparent that the plaintiff ought to recover and the judgment was manifestly for the right party and should, therefore, be affirmed. Shinn v. Railroad Co., 248 Mo. 182; Peterson v. Transit Co., 199 Mo. 344; Noble v. Blount, 77 Mo. 239; Haehl v. Railroad Co., 119 Mo. 344; Fox v. Windes, 127 Mo. 514; McFarland v. Heim, 127 Mo. 335; Sherwood v. Railroad Co., 132 Mo. 339; Schuepbach v. Gas Co., 232 Mo. 612.

ALLEN, J.—This is an action brought under section 5425, Revised Statutes 1909, to recover damages for the death of plaintiff's wife, alleged to have been caused by the negligence of the defendant street railway company in the operation of one of its cars in the city of St. Louis.

The petition, after certain formal allegations, alleges that on April 5, 1915, the defendant operated one of defendant's street cars southwardly over its track on North Fourteenth street, in the city of St. Louis, and through the negligence and carelessness of its said agents and servants, operating the same, caused the car to strike and collide with plaintiff's wife, Rose Sherman, knocked her to the street, and caused the car to run upon her, inflicting injuries from which she died within a few minutes thereafter.

And it is alleged that the striking of plaintiff's wife by said car was directly due to the negligence and carelessness of defendant, through its agents and servants, in operating the car, in that defendant's said agents and servants negligently "failed to keep and maintain a vigilant watch for the said Rose Sherman, a pedestrian upon the street moving toward the car track aforesaid so as to observe the said Rose Sherman in time to have stopped the said car and avoid striking and colliding with said Rose Sherman;" in failing to sound a gong as a warning to Rose Sherman of the approach of the car to a point where passengers customarily boarded and alighted from street cars upon said street, at a regular stopping place for receiving and discharging passengers; in negligently operating the car at a high and dangerous rate of speed, along a crowded public street; and in operating the car at a rate of speed in excess of ten miles per hour, in violation of an ordinance of the city of St. Louis in force at the time. And a violation of the so-called vigilant watch ordinance of the city of St. Louis is charged, in that defendant's motorman in charge of the car failed to use ordinary care to stop the same in time to avoid a collision with Rose Sherman, after he saw, or by the exercise of ordinary care upon his part could have seen, said Rose Sherman in a position of peril.

It is then alleged that plaintiff and Rose Sherman were the natural parents of certain children, naming them and setting forth their ages; and that as a result of defendant's negligence plaintiff has lost the services, consortium, and companionship of his said wife. Judgment is prayed in the sum of $10,000.

The answer contains first a general denial, and then alleges that the injuries, if any, which Rose Sherman received, and which are alleged to have caused her death, were caused by her own negligence in running in front of and in dangerous and close proximity to a moving street car; that such injuries, if any, were caused by the negligence of Rose Sherman in running directly in

front of and in such close proximity to a moving street car that the motorman, with the appliances at his command, and with due regard to the safety of the passengers on his car, could not have stopped the car in time to avoid striking her; that such injuries, if any, were caused by negligence of Rose Sherman in not looking or listening before she went upon the street car track, when by looking she could have seen, or by listening she could have heard, the approaching car.

The reply is conventional.

The trial, before the court and a jury, resulted in a verdict for plaintiff in the sum of $7,500. The trial court forced plaintiff to remit $2,500, and judgment was entered in plaintiff's favor for the sum of $5,000. From this judgment the defendant prosecutes the appeal before us.

The evidence shows that on April 5, 1915, plaintiff lived with his family at No. 1418 North Fourteenth street, a street extending north and south, in the city of St. Louis; plaintiff's home being on the east side of the street. This portion of Fourteenth street is in a crowded portion of the city, sometimes termed the "Ghetto," populated, for the most part at least, with people of the Jewish race. At the time of the casualty, many persons, including children, were upon the sidewalks; the day being a Jewish holiday. The evidence shows that the street at this place is thirty-six feet in width from curb to curb, the sidewalks upon each side thereof being twelve feet wide. Defendant's street car tracks at the time in question, occupied the center of the street; and consequently from either curb, or the outer edge of either sidewalk, to the center of defendant's track, with a distance of but eighteen feet.

Shortly prior to her death, Rose Sherman was standing upon the sidewalk on the west side of the street, in front of the house numbered 1415, talking with a woman who was at a window opening upon the sidewalk. She was then on the opposite side of the street from her home, and a short distance south there-

of. It appears that the members of her family, including her youngest child, about two years of age, were at or about No. 1418, where was also a Mrs. Jalinsky, who lived "in the same yard" and conducted a store at this place. The testimony in plaintiff's behalf is to the effect that this little child came out upon the sidewalk in front of No. 1418 as one of defendant's cars was approaching from the north, saw her mother across the street, and started to go to her; and that Mrs. Jalinsky, upon perceiving this, gave the alarm by crying out, "Stop the car, the baby is coming," and ran into the street after the child. According to Mrs. Jalinsky's testimony, she caught the child when the latter was within three or four feet of the passing car. There is other testimony tending to show that the child was perhaps but two feet from the car when it passed.

The evidence is that when Mrs. Jalinsky gave the alarm, as stated above, other persons in the vicinity likewise cried out; that Mrs. Sherman, hearing these cries, turned and saw her child in peril from the approaching car, rushed across the sidewalk and into the street, with her arms raised and calling upon the motorman to stop the car. There is testimony that in approaching the car track she ran in a southeasterly direction; but other testimony is to the effect that she left the sidewalk and started toward the child. In thus attempting to cross the street, to rescue her child, Mrs. Sherman came upon the track and was struck and ran upon by the car, receiving fatal injuries.

One witness, Max Sherman, a brother of plaintiff, said: "The mother ran east, and the child was coming west." According to his testimony, when Mrs. Sherman threw up her hands and called, the car was about eighty or ninety feet north of the house No. 1415, and the motorman "just kept going," and "didn't pay no attention." As to what occurred thereafter, the witness said:

"I guess the car was ten to fifteen feet away. She like to come further out and have a chance to cross

at the same time she was going over the track, and it caught her by the skirt and knocked her back over in front of the gate, . . . and rolled her around a couple times right in front of the gate.''

This witness testified that ''before the accident the car was coming about twenty miles an hour, about twice as fast as a team can; faster;'' that the car was about ten feet away when Mrs. Sherman stepped on the track.

Another witness, one Adamson, testified that he was passing north on the west side of North Fourteenth street opposite No. 1415; that he heard a woman on the east side of the street scream out, ''That child is going to get killed by the car;'' that Mrs. Sherman, who was standing at the window of No. 1415, turned, saw that it was her child, and ran into the street, throwing up her hands and calling to the motorman to stop; that the car was then eighty or ninety feet north of that point; that ''when Mrs. Sherman left the sidewalk she started southeast, across . . . and she just kept going southeast until she got to the track, and went on the track, and the car caught her and knocked her down on the cowcatcher;'' that she ''fell off the front'' and was rolled on the track probably thirty or thirty-feet ''before the car killed her.'' According to the testimony of this witness, the car ''was going between seventeen and eighteen miles an hour'' just prior to the time when it struck Mrs. Sherman. This witness further testified that he saw the child when it was about three feet from the track, and then the car ''darkened the child'' from him, i. e., passed between him and the child.

One Villinsky testified that he was standing at No. 1409, the fourth house south of No. 1415, heard the people shouting, and saw Mrs. Sherman run into the street, motioning to the motorman; that she ''turned around and started out and run to the baby;'' that when she ran on the track the car was ten to twelve

feet away; and that the car did not stop after it struck her until it was about opposite No. 1409.

It was shown that the track at this place extended slightly upward, toward the south; the grade being about one percent. And expert testimony was adduced by plaintiff tending to show that a car of this character, under the circumstances, could have been stopped in sixty feet if going twenty miles an hour, in forty feet if going fifteen miles an hour, in twenty feet, if going ten miles an hour, and that at a speed of four or five miles an hour it could have been stopped in a very short space—within four or five feet.

Defendant called the motorman of the car as a witness. He testified that he saw plaintiff's little child playing on the sidewalk on the east side of the street, and that the child never left the sidewalk; that he only saw one child. When asked on cross-examination if there was not "a whole crowd of children and men and women on each side," he said: "There might have been fifty, but I had my eye on the little fellow." When asked why he was looking at the little fellow on the sidewalk, he said: "Because he was a very little child and you couldn't trust him." He further testified that he saw plaintiff's wife run into the street. As to this, on direct examination he said:

"Well, I see a woman run out in the street just past the gutter, and she throwed up her hands for the little fellow to go back. She thought he was coming. She was running around like he was coming across the street. She got scared. I saw everything was all right, and when I got within about ten feet of a woman she runs around and cuts me off."

He testified that the car was proceeding at about six miles an hour, though at places in his testimony he refers to the speed as being four or five miles an hour. And he testified that Mrs. Sherman was about ten feet from the car when she came upon the track; and that with the appliances at hand he could have stopped the car, going six miles and hour, within ten feet. He testi-

4—Mo. App.

fied, however, that his car went ten feet after striking Mrs. Sherman; that the car "knocked her down and rolled her ten feet."

The further testimony for defendant is not material in passing upon the demurrer to the evidence.

I. It is earnestly insisted by learned counsel for appellant that the trial court committed grievous error in refusing to peremptorily direct a verdict for the defendant. It is argued that plaintiff made no showing to entitle him to go to the jury upon any theory of negligence pleaded in his petition, for the reasons:

(1) That the evidence "did not warrant a recovery under the theory of secondary negligence or the 'last chance doctrine' for the reason that there was no showing made that such alleged negligence was the proximate cause of the collision;" and (2) that "plaintiff was not entitled to recover on either theory of primary negligence pleaded, namely, failure to keep a lookout, failure to give warning, or excessive speed, for the reason that such primary negligence of defendant was not the proximate cause of decedent's death, because it was remote in the chain of causation, for subsequent thereto decedent knowingly ran onto the track in front of the car, . . . and hence her intervening negligence was the direct and proximate cause of her death."

As to the first of these, it is said, in the first place, that there was no showing that the car could have been stopped in time to have averted the casualty "after the deceased entered the 'danger zone,' that is, within two or three steps of the track." In support of the proposition that plaintiff's deceased wife was not within the danger zone until she got within two or three steps of the track, appellant cites Kinlen v. Street Railway Co., 216 Mo. 145, 164, 115, S. W. 523; Keele v. Atchison, etc., R. Co., 258 Mo. 62, 79, 167 S. W. 433; Baecker v. Missouri Pacific R. R. Co., 240 Mo. 507, 521, 144 S. W. 803; Hamilton v. Railroad, 250 Mo. 714, 722, 157 S. W. 622; McGee v. Railroad, 214 Mo. 530, 543, 114 S. W. 33.

It is unnecessary to discuss these cases, for the reason that, assuming for our present purpose that deceased did not enter the danger zone, until she came within "two or three steps" of the track, we are of the opinion that the evidence, when viewed in the light most favorable to plaintiff, suffices to take the case to the jury upon the last change doctrine. It is needless to say that since defendant did not stand upon its demurrer, but offered testimony, the demurrer to the evidence is now to be adjudged in the light of all the evidence in the case, giving plaintiff the benefit of testimony favorable to him, if any, adduced by defendant.

The testimony of the motorman is that, at the rate of speed at which the car was proceeding when Mrs. Sherman was in the street running toward the track (and he says that he saw her all the time), he could have stopped the car, with the appliances at hand, within ten feet; that the car was ten feet from Mrs. Sherman *when she was upon the track;* but he nevertheless ran upon her and, according to his testimony, dragged her about ten feet, while according to some testimony in the case she was dragged much farther. And there is testimony that the car was ten or twelve feet from Mrs. Sherman when she was actually on the track. This testimony warrants a finding that the motorman, by the exercise of ordinary care, could have stopped the car and avoided injury to the deceased after she came within the danger zone. Obviously, under the circumstances of the case, the danger zone was not limited to the width of the track. It is not contended by appellant that the deceased was not in the danger zone until she actually came upon the track; on the contrary, it is said that she was not within such zone until she got within two or three steps of the track. If the motorman saw her all the time, as he said he did; saw that she was upon the street running toward the track, and in the very act of placing herself in front of the oncoming car, ordinary care required that he take prompt action to stop the car when it became apparent

to a reasonably prudent man that she was about to go upon the track. Under appellant's own theory, the car was more than ten feet distant when the deceased entered the danger zone, and consequently the jury could with propriety find that the car could have been stopped, by the exercise of ordinary care, without striking her.

It is argued, however, that no recovery may be had under the last chance doctrine for the reason that the evidence shows without dispute that the deceased "knowingly, placed herself in a place of danger and knowingly and willfully permitted the car to strike her;" and that consequently her own reckless or wanton act, and not the failure of the motorman to stop the car, was the proximate cause of her death. In this connection a number of authorities are cited, including Moore v. Lindell Ry. Co., 176 Mo. 528, 75 S. W. 672; Kinlen v. Railway Co., supra; Gettys v. Transit Co., 103 Mo. App. 564, 78 S. W. 82. But we are of the opinion that these authorities have, in any event, no application to the facts of this case. In answer to this argument of appellant, respondent says that the facts in evidence are such as to make this a "rescue case," since the evidence for plaintiff goes to show that the deceased ran in front of this approaching street car in an effort to save her child which was running out into the street toward the track in front of an oncoming car and in peril therefrom. The doctrine thus invoked by plaintiff is expounded in Eckert v. Railway Co., 43 N. Y. 502, 3 Am. Rep. 721, and is expressly adopted by our Supreme Court in Donahue v. Railway Co., 83 Mo. 560, 53 Am. Rep. 594. [See, also, Eversole v. Railway Co., 249 Mo. 539, 155 S. W. 419; Williams v. Lamp Co., 173 Mo. App. 87, 157 S. W. 130; Railway Co. v. Liderman, 187 Ill. 463, 58 N. E. 367, 52 L. R. A. 655, 79 Am. St. Rep. 220; Penn. Co. v. Laughendorf, 48 Ohio St., 316, 13 L. R. A. 190.] Under this doctrine, which, as said, has the express sanction of our Supreme Court, if a fellow being is put in peril of life or limb through the negligence of another, such negligence is held to be the proximate cause of injury to one who is injured in

an attempt to rescue the person thus in danger. [William v. Lamp Co., supra, and authorities cited.] But as to plaintiff's right to maintain his action upon this theory, i. e., upon the theory of negligence on the part of defendant's motorman whereby this child was placed in a position of peril, constituting the proximate cause of the death of plaintiff's wife while attempting· to rescue her child, it is apparent that his petition does not proceed upon such theory. We have set out, supra, the averments of the petition as to defendant's negligence, and it will be observed that it is not charged that the child was placed in a position of peril through the negligence of defendant, and that plaintiff's deceased wife came to her death in going to the rescue thereof. The evidence appears to suffice to make out a case upon that theory, since the little girl may be regarded as having been within the danger zone, under the circumstances, from the time when she left the sidewalk and started toward the track upon which the car was approaching. [See Cytron v. Transit Co., 205 Mo. 692, loc. cit. 719, 720, 104 S. W. 109.] But such was not the case which defendant, by the petition, was called upon to meet.

However, the evidence going to show that the child was not only within the danger zone but was closely approaching the track upon which the car continued to proceed forward, and that under such circumstances the mother rushed out into the street in an effort to save her child, and thus came upon the track, tends to relieve her of contributory negligence (if that be involved), and makes the case one wherein a recovery may not be denied on the ground that the deceased knowingly and willfully or wantonly placed herself in front of a moving car. In Railroad Co. v. Linderman, supra, wherein the facts involved were quite similar to those here present, the court, after quoting from Eckert v. Railroad, supra, said:

"This is a clear statement of the law and the reason upon which the rule rests, and is abundantly sustained

by the authorities. Whether, in this case, the plaintiff acted with reasonable prudence or with recklessness, in attempting to save her child, was a question for the jury under all the facts and circumstances in evidence.''

As to the argument that the law will not permit a recovery, even under the humanitarian doctrine, ''where the injured party knowingly places himself in a place of danger,'' and ''knowingly or willfully'' permits a train or car to strike him, as said in the Kinlen Case, supra, or ''deliberately or advisedly'' places himself in a position which makes a collision with a street car imminent and retains that position until the collusion occurs, as said in the Gettys Case, supra, or was ''guilty of negligence of such kind, character, or degree as to constitute it recklessness or wantonness,'' as said in the Moore Case, supra, we think that the case before us is readily distinguishable from those upon which appellant relies. Acting under a human and natural impulse, this mother started to the rescue of her child upon hearing the alarm and seeing the child's peril, and ran into the street in great excitement and in a frenzy of fear that her child would be killed. Under such circumstances, it would be highly unreasonable to require deliberate judgment on her part. As said in Penn Co. v. Langendorf, 48 Ohio St. 316, 322, 323, 28 N. E. 172, 174, 13 L. R. A. 190, 29 Am. St. Rep. 553:

''To require one so situated to stop and weigh the danger to himself, of an attempt to rescue another, and compare it with that overhanging the person to be rescued, would be in effect to deny the right of rescue altogether if the danger was imminent. The attendant circumstances must be regarded; the alarm, the excitement and confusion usually present on such occasions. . . . And the doctrine that one, who, under those or similar circumstances, springs to the rescue of another, thereby encountering even great danger to himself, is guilty of negligence *per se,* is neither supported by principle nor authority.''

Nor is the rescuer's act to be denominated willful, reckless, or wanton, within the meaning of the doctrine invoked by appellant.

That defendant recognized that the evidence as to the child's peril and the mother's attempt to rescue her offspring was a matter to be reckoned with in the case is shown by the fact that defendant offered an instruction, which the court gave, telling the jury that if they found that the motorman was operating the car in question in a careful and prudent manner, and further found "that the child of deceased was in a position of safety as the car was approaching a place in the street opposite where said child was located," then, if they found the further facts hypothesized, plaintiff was not entitled to recover.

Much stress is laid upon the testimony tending to show that the deceased ran toward the southeast, in an effort, as appellant says, to "head off" the car. As to this, it may be observed that under all of the testimony the jury could well find that deceased ran toward the child, or, as one witness said, "ran east," until she realized the imminence of her own danger, and then sought to avoid the collision by turning from the approaching car. And, in any event, the testimony in question does not, in our judgment, warrant us in taking any other view of the case than that indicated above.

We regard it as clear that the evidence adduced established, prima facie, a right of recovery, and that the case was consequently one for the jury.

II. Complaint is made of the ruling of the trial court in admitting, over defendant's objection, testimony as to the number and ages of the minor children of plaintiff and his deceased wife. As shown by the argument of counsel and the statements of the court, appearing in the record, this testimony was admitted upon the theory that, with the other evidence in the case, it tended to show the pecuniary value of the life of

the deceased to the plaintiff. We think that there was no error in this. It is true, as pointed out by appellant, that where one is suing for personal injuries testimony of the character in question is incompetent. [Stephens v. Railroad, 96 Mo. 207, 9 S. W. 589, 9 Am. St. Rep. 336; Dayharsh v. Railroad Co., 103 Mo. 570, 15 S. W. 554, 23 Am. St. Rep. 900; Hecke v. Dunham, 192 S. W. 120.] And on the other hand, where the wife is suing for the wrongful death of her hsband, it is established by many decisions in this State that it is competent to show the number and ages of the minor children, since the burden of supporting them is then cast upon the plaintiff. The same reason for admitting the testimony where the husband is suing for the death of his wife is not present; however, we are of the opinion that it is competent by this means to show the value to the plaintiff of the life of the deceased wife whose services plaintiff has lost. Such evidence is not admitted upon the theory that the damages are to be measured by the needs of the family, but upon the theory that proof that the wife was able to care for, and did administer to the wants of, several minor children, casts light upon the value of her services as plaintiff's wife, and may be considered in determining the extent of the loss suffered by plaintiff.

Appellant cites and relies upon Bradley v. Ohio, etc., R. Co., 122 N. C. 972, 30 S. E. 8. In that case the judgment below was reversed because of error in an instruction on the measure of damages. We do not agree with the majority opinion condemning the instruction because it allowed the jury to consider the number and ages of the infant children of the deceased wife. In our view, the concurring opinion of DOUGLAS, J., is sound in holding the instruction under consideration to be bad only for the reason that it told the jury that they could consider the number and ages of the infant children, *inter alia,* in putting a pecuniary value on the intellectual and moral training that the deceased might have been able to give them.

We are pointed to no authority in this State directly in point upon this question. In O'Melia v. Railway Co., 115 Mo. 205, loc. cit. 222, 21 S. W. 503, 507, in an action by the wife for the death of her husband it was said: "There was no error in permitting Mrs. O'Melia to testify as to the number of her children. The elements of her damage are necessarily different from her husband."

The sentence last quoted cannot be taken as adjudication of the question now before us, which was not involved in that case.

We think that the testimony was competent for the purpose for which it was offered. Defendant would have been entitled, however, to an instruction, had it asked one, telling the jury the purpose, and the only purpose, for which such testimony could be considered by them, viz., that indicated above.

Complaint is made of plaintiff's main instruction, but the attack thereupon is sufficiently disposed of by what is said above.

We perceive no reversible error in the record, and it follows that the judgment should be affirmed.

It is so ordered.

*Reynolds, P. J.,* and *Becker, J.,* concur.