CAPE LOOKOUT COMPANY v. THOMAS GOLD ET ALS.

(Filed 17 October, 1914.)

1. **Torrens Law—Remedial Statutes—Interpretation.**

    Chapter 90, Laws 1913, known as the "Torrens Law," is not in derogation of common right, but is of a remedial character, and should be liberally construed according to its intent.

2. **Same—Summons—Notice—Publication.**

    Where the summons in proceedings to register lands under chapter 90, Laws 1913, known as the "Torrens Law," has been issued and served under the provisions of section 6 of the act, it is not requisite to the validity of the proceedings that the publication of notice of filing should have been made on exactly the day the summons was issued, if the publication has been made in the designated paper once a week for four successive weeks, as directed by section 7 thereof. It appears in this case that the publication in a weekly paper was made in its first issue after the clerk of the court received the summons, and that all other requirements of the statute had been complied with.

3. **Torrens Law—Notice—Publication—Waiver.**

    In proceedings under the "Torrens Law" (ch. 90, Laws 1913, secs. 6 and 7) to register a title to lands, a party claiming an interest in the lands waives his rights to object on the ground of the irregularity in the publication of notice by appearing and answering the petition.

CLARK, C. J., discusses the "Torrens" and other systems of land registration.

APPEAL by defendant from *Peebles, J.,* at chambers in CRAVEN, 15 September, 1914.

*J. F. Duncan for plaintiff.*
*George F. Ward, T. D. Warren, and A. D. Ward for defendants.*

CLARK, C. J. This is a proceeding under chapter 90, Laws 1913, "To provide for the assurance and registration of land titles," commonly known as the "Torrens Law," and is the first time that this statute has been presented in this Court.

The petition in this case was filed before the clerk of Carteret Superior Court, 25 June, 1914, and on 10 July, 1914, summons dated 9 July was issued in accordance with section 6, chapter 90, Laws 1913. Pursuant to section 7 of said act, on 10 July, 1914, notice of filing of said petition was delivered by the clerk to the publisher of a newspaper having general circulation in the county of Carteret, where the land lay. The publication was made in the next issue of said paper, on 17 July, 1914, and consecutively each succeeding week for four weeks.

On the return day of the summons other defendants came in on their own motion, and counsel entered a general appearance for all, and an order was made by the clerk allowing said defendants till 25 September to answer or demur to the petition. After said general appearance duly entered, the defendants, through their attorneys, excepted to the sufficiency of the publication because that the first publication appeared in the paper on 17 July, whereas the summons was issued on 10 July. This publication was made in the first issue of the paper that appeared after the notice was delivered by the clerk to the publishers.

The summons was duly served and the clerk adjudged that the publication of the notice was complete. On appeal to the judge, he found that though the issues of the paper were dated 10 July and 17 July, in fact they were printed according to custom on the day before their dates, *i. e.,* on 9 July and 16 July, and approved the order of the clerk. In these rulings there was no error.

Laws 1913, ch. 90, sec. 6, provides that the summons shall be issued as in other cases of special proceedings, "except that the return shall be at least sixty days from the date of the summons and shall be served in the same manner at least ten days before the return thereof." It is not controverted that this was done. Indeed, the summons being dated on 9 July and returnable 9 September, gave sixty-two days.

Section 7 of said act provides that, "In addition to the summons issued, prescribed in the foregoing section, the clerk of the court shall at the time of issuing such summons publish a notice of the filing thereof (prescribing what the notice shall contain) in some secular newspaper published in the county wherein the land is situate . . . once a

week for four issues of such paper." It is not controverted that this section was complied with in all respects, except it is contended that the notice was not published "at the time of issuing said summons." It was impossible to publish the notice for four weeks in the newspaper "at the time of issuing the summons." It would seem a reasonable construction of this statute that the notice should be published for four weeks, in the manner prescribed, between the issuing of the summons and the return day thereof. But, however this might be, it was proper that the notice should be put in the paper at an early date after issuing the summons, and both the clerk and the judge find that as a matter of fact the notice appeared in the very first issue of the paper, towit, in its issue of 17 July, which was printed off 16 July and was the first issue printed off after the summons was issued on 10 July.

We presume that the parties have brought this plea up merely out of abundant caution, as this statute is now before the Court for the first time and there have been no decisions settling its construction or the practice under it. It seems, however, to be a very plain statute, and was evidently drawn with great care and doubtless after consideration of the numerous statutes of this kind in force in the other States and carefully adapting what was thus culled out to our system of law and procedure and to our local conditions.

Besides, as to the defendants, the entry of the general appearance for them waived any defect as to the publication of the notice, if there had been any.

The principle of the "Torrens System" is conveyance by registration and certificate instead of by deed, and assimilates the transfer of land to the transfer of stocks in corporations. Like the Drainage Act, which has been before us, this Torrens system was adopted at the wish of the landowners of the State, as evidenced by the proceedings of the Farmers' Union, the Chamber of Commerce of many cities, and other organizations.

Three systems of transferring real estate are in use in the civilized world: (1) Transfer without recording or registering; (2) the ministerial system of recording deeds; and (3) the judicial system of registering titles. Niblack on the Torrens System, 2; 3 Devlin Deeds (3 Ed.), secs. 1438-1473.

The first system is used in most of the counties of England, where land is transferred merely by the production and delivery of all the title deeds, including one from the seller to the purchaser. This is a substitute for the original common-law system of "livery of seizin." Under the law of primogeniture the eldest son inherits the real estate and the title papers go with the land. Until about fifty years ago land was scarcely considered a commercial commodity in England, and the rarity

167—5

of its transfer made the above system less inconvenient than it would otherwise have been. Under that system the owner of land could borrow money on the security of his land by merely depositing his title papers with the lender, who thus acquired an equitable lien on the land. This was popular with both borrowers and lenders, because it was cheap, safe, and secret.

The second system (of recording deeds) was the only one in use in this country before the adoption of the Torrens system, and prevails also in most of the countries of Europe, outside of England, and in South America and in Middlesex and York in England. In most of these countries, however, the conveyances are not recorded in full, but merely a memorial, in a prescribed form, is copied on the records.

The third or judicial system prevails to some extent in Russia, Turkey, Norway, Mexico, and some other countries. Its adoption was discussed in England and a report was made in its favor by a commission appointed by Parliament in 1830. It, however, was first adopted in South Australia at the instance of Sir Robert Torrens in 1857, and in the first two years 1,000 titles were registered under it, though the system was, as usual, optional. A similar act was passed in Queensland in 1861, in New South Wales, Victoria, and Tasmania in 1862, in New Zealand in 1870, in West Australia in 1874, and in Fiji in 1876. Though there is some diversity in these statutes, the system has thus prevailed in Australia, and indeed throughout Australasia, for something like half a century.

The Torrens law was adopted in the several provinces of Canada soon after its success in Australia had been demonstrated. A bill proposing a modified system was presented in the English Parliament by Lord Cairns, then solicitor general, in 1859. In 1862 a somewhat more comprehensive bill was passed at the instance of Lord Chancellor Westbury. This was amended at the instance of Lord Chancellor Selborne in 1873 and again passed in 1875. The act, however, was not made compulsory till 1897, and then only as to certain localities, including the whole of the county and the city of London.

In this country the first States to adopt it were Illinois, California, Massachusetts, Oregon, Minnesota, and Colorado. In some of these constitutional defects were at first found by those courts whose judges were not favorable to the innovation. But the act was corrected in those States to remove the objections found, or succeeding judges held the act to be constitutional. In many other States the system has since been adopted, including our own.

Like the drainage act, however, its adoption by landowners is with us optional and not compulsory. Its features need not be discussed, as they can be found in the act itself. The defendants contend that the act

is "in derogation of common right" and should be strictly construed. It is not in derogation of common right, but is a remedial statute and to be liberally construed, according to its intent, "so as to advance the remedy and repress the evil." This appeal calls for the construction only of the provision in section 7 above set out, as to which the judgment of the court below is

Affirmed.