### H. T. DILLON v. CARL BROEKER.

(Filed 17 September, 1919.)

**1. Torrens Law — Statutes — Contracts—Specific Performance—Affidavit—Notation.**

A contract to convey lands where the owner has registered it, under the Torrens Law, cannot be specifically enforced until the complainant has filed an affidavit and had notation made on the books as required by sec. 25 of the statute.

**2. Same—Courts.**

The statute called the Torrens Law, under section 28 thereof, is the only "operative act" to "affect the title to lands registered thereunder," and, construing this with the other relevant sections, a contract to convey the lands so registered is a voluntary act affecting the title thereof, and under the statutory provisions such conveyance will not be recognized until recorded accordingly; and in the absence of compliance with the statute in this respect, the courts will not decree specific performance.

**3. Torrens Law — Statutes — Registration—Contracts—Original Parties—Creditors and Purchasers.**

The statute known as the Torrens Law draws no distinction between the original parties to deeds or contracts affecting title to lands registered

5—178

under its provisions and creditors or purchasers, and in respect to such registration they stand upon the same footing.

4. **Torrens Law—Statutes—Remedial—Interpretation.**

The Torrens Law is remedial and not in derogation of common right, and should be liberally construed, according to its intent, to advance the remedy and redress the mischief.

APPEAL by plaintiff from *Devin, J.,* at June Term, 1919, of WASH-INGTON.

This is an action to compel specific performance of a contract to convey land, the defendant herein being the registered owner of the land under the Torrens Law.

The plaintiff admitted upon the trial that his contract had not been registered under the Torrens Law and that the affidavit required by section 25 of said law had not been filed.

The jury returned the following verdict:

1. Did the defendant contract in writing to convey to plaintiff the land described in the complaint? Answer: "Yes."

2. Did plaintiff, within the time provided in said contract, notify the defendant that he would take said land, and on his part do all things required of him to entitle him to a conveyance of said land by defendant? Answer: "Yes."

3. Has plaintiff at all times been ready, able and willing to perform said contract on his part, as alleged in the complaint? Answer: "Yes."

4. Did defendant refuse to perform said contract and to convey said land, as alleged in the complaint? Answer: "Yes."

5. Was summons duly issued and attachment duly issued and levied on the land described in the complaint, and docketed and indexed in the office of the clerk of the Superior Court within three days, and were notices of summons and attachment duly published as required by law, and complaint filed, all prior to any transfer of title to or conveyance of said land by defendant? Answer: "Yes."

The defendant moved to dismiss the action before the verdict. The court did not then rule upon the motion to dismiss but reserved the same, and upon the coming in of the verdict allowed the motion and dismissed the action for noncompliance with the Torrens Law, and the plaintiff excepted and appealed.

*Small, MacLean, Bragaw & Rodman, attorneys for plaintiff.*
*Ward & Grimes, attorneys for defendant.*

ALLEN, J. The Torrens Law is comparatively new in this State, having been enacted in 1913 (ch. 90, Laws 1913), and it marks so wide

a departure from the principles before existent, regulating the acquisition of titles to land or any interest therein, that but little if any assistance can be had in determining its proper construction by recurrence to former statutes and decisions.

It was first adopted in Australia in 1857 at the instance of Sir Robert Torrens, which accounts for its name, and is now a part of the statute law of many of the States of this country.

As stated in Devlin on Deeds, Vol. 3, secs. 1439, 1440, "The object of the system is, first, to secure by a decree of court, or other similar proceedings, a title which shall be impregnable against any attack, and when this title is once determined, to provide that all subsequent transfers, incumbrances, or proceedings affecting the title shall be placed on a page of the register and marked on the memorial of title. The object is to secure the evidence of title exclusively by a certificate issuing from public authority.

"When title has been registered the owner who desires to sell produces his original certificate, as he would the certificate of stock in a corporation, and the buyer may safely purchase on the faith of what the certificate shows. If a sale has been affected, the old certificate is surrendered and a new one received in its place. Under this system title to land is not conveyed by a deed, as such, but only by the registration of the transfer, as in the case of the sale of the shares of stock in a corporation, and the deed, if made, is considered as nothing more than a contract between the parties by which the officer intrusted with the duty is authorized to make the transfer. As many times as a sale is made the old certificate is surrendered and a new one given in return. If a mortgage is executed, the transaction is noted on the certificate (and on record), and when it is paid its release is likewise noted. If a trust is created, proper endorsements are made; in a word, the object of the system is to make the certificate the complete repository of all that may affect the title as there is only one certificate of title on file at any time which shows the state of the title and to what extent, if any, it is affected by incumbrances."

It was with this object in view—to secure by a decree of court a title impregnable against any attack, and to make a permanent record of the exact status of the title with all liens, incumbrances and claims against it—that the statute was enacted, which "is not in derogation of common right, but is a remedial statute and to be liberally construed, according to its intent, so as to advance the remedy and repress the evil." *Lookout Co. v. Gold,* 167 N. C., 66.

When we turn to the statute we find the first nine sections devoted to procedure, and to declaring the effect of the decree at the time of its entry. In the tenth section the county commissioners are required to

furnish a book to the register of deeds, "To be called registration of titles, in which said register shall enroll, register and index, as hereinafter provided, the decree of title hereinbefore mentioned and the copy of the plot contained in said petition, and all subsequent transfers of title, and note all voluntary or involuntary transactions in any wise affecting the title to said land authorized to be entered thereon." It also directs the register to issue "an owner's certificate of title," and prescribes the form.

Section 11 requires that all certificates be numbered, "And a separate page or more, with appropriate space for subsequent entries, shall be devoted to each title in the registration of titles book for said county."

Sections 12 to 25 regulate the transfers of title in whole or in part, and the creation of liens, trusts, equitable interests, tax sales, etc., with provision for noting on the book for registration of titles instruments elsewhere registered.

Section 25 provides that every registered owner under the act, with certain exceptions not material to this appeal, shall "Hold the land, free from any and all adverse claims, rights or incumbrances not noted on the certificate of title"; and further, "Any person making any claim to or asserting any lien or charge upon registered land existing at the initial registry of the same and not shown upon the register, or adverse to the title of the registered owner, and for which no other provision is herein made for asserting the same in the registry of titles, may make an affidavit thereof setting forth his interest, right, title, lien or demand and how and under whom derived, and the character and nature thereof. The affidavit shall state his place of residence and designate a place at which all notices relating thereto may be served. Upon the filing of such affidavit in the office of the clerk of the Superior Court the latter shall order a note thereof. as in the case of charges or encumbrances, and the same shall be entered by the register of deeds. Action shall be brought upon such claim within six months after the entry of such note, unless for cause shown the clerk shall extend the time. Upon failure to commence such action within the time prescribed therefor the clerk shall order a cancellation of such note."

Section 27 renders adverse possession of no effect against the registered owner, and section 28, "The registration shall be the only operative act to transfer or affect the title to registered land, and shall date from the time the writing, instrument or record to be registered is duly filed in the office of the register of deeds, subject to the provisions of this act; no voluntary or involuntary transaction shall affect the title to registered lands until registered in accordance with the provisions of this act: *Provided,* that all mortgages, deeds, surrendered and canceled certificates, when new certificates are issued for the land so deeded, the other paper-writings, if any, pertaining to and affecting the registered

estate or estates herein referred to, shall be filed by the register of deeds for reference and information, but the registration of titles book shall be and constitute sole and conclusive legal evidence of title."

The other sections of the act have no bearing on the question now before us. This summary of the act not only manifests a purpose on the part of the General Assembly to establish · a title in the registered owner, impregnable against attack at the time of the decree, but also to protect him against all claims or demands not noted on the book for the registration of titles, and to make that book a complete record and the only conclusive evidence of the title.

In section 10 all voluntary and involuntary transactions affecting the title must be noted on the book. In section 14, "All registered encumbrances, rights or adverse claims affecting the estate represented thereby shall continue to be noted, not only upon the certificate of title in the registration book, but also upon the owner's certificate, until same shall have been released or discharged. And in the event of second or other subsequent voluntary encumbrances the holder of the certificate may be required to produce such certificate for the entry thereon or attachment thereto of the note of such subsequent charge or encumbrance as provided by section 20 of this act." In section 25 any person making any claim "adverse to the title of the registered owner" is required to file an affidavit before the clerk, who must notify the register that he may note the claim on the book for the registration of titles, and he must then bring action on his claim within six months, unless the clerk extends the time for good cause shown, such as the claim not being due or other good reason made to appear, and if he fails to bring action the note of his claim is canceled. This is as to claim against the registered owner and not one against a purchaser from him.

In section 28 "No voluntary or involuntary transaction shall affect the title to registered lands until registered in accordance with the provisions of this act," and "the registration of titles book shall be and constitute sale and conclusive legal evidence of title."

The contract to convey on which the plaintiff declares is a "voluntary transaction" affecting the title, which section 10 says shall be noted, which has not been done. It is a claim adverse to the registered title, and under section 25, in order to maintain an action, he must make an affidavit and have notation made, which he has failed to do.

And under section 28 registration under the act is the only "operative act" to "affect the title to registered land"; no voluntary act "shall affect the title to registered land until registered in accordance with the provisions of this act," and "the registration of titles book shall be and constitute sole and conclusive legal evidence of title."

These provisions clearly indicate the purpose to require all claims against the title to be registered under the act, and to recognize no other, and the fact that the statute was enacted by the General Assembly with full knowledge that for near a hundred years as to mortgages, and for thirty years as to deeds, these instruments were valid between the parties without registration, and invalid as to creditors and purchasers only from registration, and that no distinction is made in the statute in favor of creditors and purchasers, is strong evidence of the intent to place the owner of the registered title, creditors and purchasers on the same footing as to. registration under the act, and that no claim against either can be maintained until the act is complied with.

It follows necessarily that the judgment must be affirmed as the plaintiff admits his failure in this respect.

Affirmed.