RICHMOND CEDAR WORKS v. FARMERS MANUFACTURING COMPANY, JOHN L. ROPER LUMBER COMPANY, ADDIE R. KNIGHT, SAMUEL D. EURE AND WIFE, SALLIE S. EURE, MARY E. HARRELL, C. L. HARRELL, ESTELLE R. GATLING AND HUSBAND, WILLIAM E. GATLING, AND TOBE DANIELS

— AND —

RICHMOND CEDAR WORKS v. FARMERS MANUFACTURING COMPANY, JOHN L. ROPER LUMBER COMPANY, ADDIE R. KNIGHT, SAMUEL D. EURE AND WIFE SALLIE S. EURE, MARY E. HARRELL, C. L. HARRELL, ESTELLE R. GATLING AND HUSBAND WILLIAM E. GATLING AND TOBE DANIELS

— AND —

CHARLES C. EDWARDS, JR., RUTH J. HOOVER AND HAROLD M. MANESS AND WIFE BUENA B. MANESS Sucessors in title to RICHMOND CEDAR WORKS v. SAMUEL E. CHESSON

No. 781SC562

(Filed 15 May 1979)

1. **Deeds § 25— proceeding for new certificate of title under Torrens Law—notice by publication—inadequate description**

    A notice published in a newspaper of a petition for a new certificate of title to land under the Torrens Law did not contain an adequate "short but accurate description of the land" within the meaning of G.S. 43-10 where it described the land only as "Registered Estate No. 9, Book 1, Page 33, of Gates County Public Registry."

2. **Deeds § 25— proceeding under Torrens Law—superior title from common source**

    In a contested proceeding for the registration of a land title under the Torrens Law, the evidence was sufficient to establish appellees' superior title to the land under the common source doctrine, and a new certificate of title was properly issued to appellees.

APPEAL by Samuel E. Chesson, petitioner in *Richmond Cedar Works v. Farmers Manufacturing Company et al.;* and respondent in *Charles C. Edwards, Jr., et al. v. Samuel E. Chesson,* from *Tillery, Judge.* Judgment entered 24 July 1977 in Superior Court, GATES County. Heard in the Court of Appeals 8 March 1979.

On 3 August 1972, Samuel Chesson filed a petition and motion in the cause in the Office of the Clerk of Superior Court in Gates County for a new certificate of title to certain land pursuant to the Torrens Law, G.S., Chap. 43. Chesson alleged that he had purchased the land in question from Richmond Cedar Works

(hereinafter referred to as Richmond) on 19 May 1972. Certificate of title for the land had been issued to Richmond on 26 March 1928 pursuant to the Torrens Law. The original certificate of title had been lost. Chesson moved that the certificate issued to Richmond be cancelled and that a new certificate be issued to him. Thereafter, a notice of the petition was published in the Gates County Index, as required by G.S. 43-10. On 15 September 1972, the Clerk of Superior Court entered an order cancelling the certificate of title issued to Richmond and issued a new certificate of title to Chesson.

On 31 August 1973, Charles C. Edwards, Jr., Ruth J. Hoover, and Harold M. Maness and wife, Buena B. Maness (hereinafter referred to as Edwards), alleged successors in title to Richmond Cedar Works, filed a motion to vacate the order of the Clerk of Superior Court dated 15 September 1972. Edwards alleged that the purported notice of publication was invalid, in that no sufficient description of the lands was given to alert anyone who had a claim or interest in the land. Edwards further alleged that they were the holders of record title to said land which was superior to Chesson's. Edwards filed an answer to Chesson's petition and a petition on 31 August 1973 alleging that they were the *bona fide* purchasers for value of said land by reason of the *mesne* conveyance of Richmond to Edwards; that Richmond had failed to surrender its certificate of title when it conveyed the land; and that the common-law deed to Chesson was inferior and junior to the title held by Edwards. On 8 October 1973, Chesson filed a response to the petition of Edwards denying that Edwards owned any interest in the lands in question since Chesson held the certificate of title and since no adverse claims were noted on the certificate. In Chesson's reply to Edwards' answer, Chesson denied that Edwards held any interest in the land, and pleaded that Edwards' negligence and the doctrine of laches barred any recovery.

On 29 August 1974, the Clerk of Superior Court entered an order vacating his order of 15 September 1972 and allowing Edwards to file an answer to Chesson's petition. After hearing arguments on the petitions filed by both parties, the clerk entered another order on 29 August 1974 cancelling the certificate of title of Chesson and Richmond and issued a new cer-

tificate of title to Edwards. Chesson and Edwards appealed to the Superior Court.

At a hearing in the Superior Court, an order was entered by Judge Peel affirming the vacating and setting aside of the 15 September 1972 order and allowing Edwards to file answer. Judge Peel entered a companion order of remand to the clerk directing the clerk to hold a full hearing on the issues or questions before him respecting claim to title of the lands. In an order filed 24 September 1976, Judge Small transferred the scheduled hearing before the Clerk of Superior Court of Gates County to the Clerk of Superior Court of Perquimans County.

On 26 November 1976, an order was entered by the Clerk of Superior Court of Perquimans County holding the Edwards' claim of title was superior to Chesson's based upon the application of the common source doctrine. The clerk ordered a new certificate of title to be issued to Edwards. Judge Tillery affirmed the order of the Clerk of Perquimans County. Chesson appealed.

*Hutchins, Romanet, Thompson & Hillard, by R. W. Hutchins, for Samuel Chesson, appellant.*

*White, Hall, Mullen, Brumsey & Small, by Gerald F. White; J. Kenyon Wilson, Jr. and M. H. Hood Ellis, for appellees.*

ERWIN, Judge.

The first question presented on this appeal is: "Did the Court err in vacating and setting aside the September 15, 1972, Judgment?" We answer, "No."

These special proceedings were filed pursuant to the provisions of G.S., Chap. 43, entitled "Land Registration," and commonly known as the "Torrens Law." A discussion of the history and development of the Torrens Law is set forth in *Cape Lookout Co. v. Gold*, 167 N.C. 63, 83 S.E. 3 (1914). Justice Allen, speaking for our Supreme Court in *Dillon v. Broeker*, 178 N.C. 65, 67, 100 S.E. 191, 192 (1919), quoted Devlin on Deeds, Vol. 3, Secs. 1439, 1440, as follows:

"'[T]he object of the system [Torrens] is, first, to secure by a decree of court, or other similar proceedings, a title which shall be impregnable against any attack, and when this title

is once determined, to provide that all subsequent transfers, incumbrances, or proceedings affecting the title shall be placed on a page of the register and marked on the memorial of title. The object is to secure the evidence of title exclusively by a certificate issuing from public authority.

'When title has been registered the owner who desires to sell produces his original certificate, as he would the certificate of stock in a corporation, and the buyer may safely purchase on the faith of what the certificate shows. If a sale has been affected, the old certificate is surrendered and a new one received in its place. Under this system title to land is not conveyed by a deed, as such, but only by the registration of the transfer, as in the case of the sale of the shares of stock in a corporation, and the deed, if made, is considered as nothing more than a contract between the parties by which the officer intrusted with the duty is authorized to make the transfer. As many times as a sale is made the old certificate is surrendered and a new one given in return. If a mortgage is executed, the transaction is noted on the certificate (and on record), and when it is paid its release is likewise noted. If a trust is created, proper endorsements are made; in a word, the object of the system is to make the certificate the complete repository of all that may affect the title as there is only one certificate of title on file at any time which shows the state of the title and to what extent, if any, it is affected by incumbrances.' "

With the above in mind, we will now consider the record before us.

The clerk entered the following order, which was affirmed by Judge Peel:

"This proceeding coming on to be heard and being heard on motion of Charles C. Edwards, Jr., Ruth J. Hoover, Harold M. Maness and wife, Buena B. Maness, movants as appear of record herein, to vacate Order herein dated September 15, 1972, pursuant to the applicable provisions of G.S. 1A-1, Rule 60, Rules of Civil Procedure, and other applicable law, and the court having considered the said motion and other documents comprising the Record Proper, and having heard the arguments of counsel the court is of the opinion that said

motion was filed in apt time and that movants were taken by surprise in the entry of the aforementioned order; that said movants had no notice of the 'PETITION AND MOTION IN THE CAUSE' filed herein, that these movants had no notice that said order was about to be entered, and that the said purported notice by publication incident to the entry of said order is and was invalid and of no force and effect and is and was particularly invalid and of no force and effect as to said movants; that movants have a good and meritorious defense to the said 'PETITION AND MOTION IN THE CAUSE,' as shown by proposed answer of movants filed of record herein;

WHEREUPON, it is ORDERED, ADJUDGED, and DECREED:

1. That the said order heretofore entered herein on September 15, 1972, be and the same is hereby vacated and set aside.

EXCEPTION NO. 1

2. That the filing of said answer by said movants be and the same is hereby approved and allowed.

EXCEPTION NO. 2

This 29th day of August, 1974.

s/ HAYES CARTER
Clerk"

A portion of Judge Peel's order reads:

"WHEREUPON, it is ORDERED, ADJUDGED, and DECREED:

1. That the said ORDER of the clerk, dated August 29, 1974, vacating and setting aside his ORDER herein of September 15, 1972, and allowing said movants to file Answer herein, is affirmed.

EXCEPTION NO. 4"

[1] The appellees contend that they received no notice, actual or constructive, of the appellant's proceeding to have a new certificate of title issued pursuant to G.S. 43-17 or G.S. 43-17.1. Therefore, the clerk's order, as set out above, was proper, and Judge Peel's judgment affirming the clerk's order was also valid and proper.

The appellant contends that the order entered 15 September 1972 issuing a new certificate of title to him was completely proper, and all orders and judgments following such order should be held by this Court to be error. The problem presented on the issue of adequate notice has not been decided by either appellate court of this State. This case will be of first impression.

The appellees contend that the notice in question as published in the county newspaper was defective, in that "a short but accurate description of the land" was not set forth in the notice.

The notice read in part: "The lands covered by said certificate of title are described as follows: Being Registered Estate No. 9, Book 1, Page 33, of Gates County Public Registry, to which reference is made for a more full and complete description."

The appellees further contend that their petition and motion in the cause was timely filed on 31 August 1973 pursuant to G.S. 43-26, and they have called into question and attack the certificate of title issued on 15 September 1972 to the respondent.

G.S. 43-10 provides in part:

> "*Notice of petition published.* — In addition to the summons issued, prescribed in the foregoing section [§ 43-9], the clerk of the court shall, at the time of issuing such summons, publish a notice of the filing thereof containing the names of the petitioners, the names of all persons named in the petition, together *with a short but accurate description of the land* and the relief demanded, in some secular newspaper published in the county wherein the land is situate, and having general circulation in the county; and if there be no such paper, then in a newspaper in the county nearest thereto and having general circulation in the county wherein the land lies, once a week for eight issues of such paper." (Emphasis added.)

Service of process by publication is in derogation of the common law; therefore, statutes authorizing it are strictly construed, both as grants of authority and in determining whether service has been made in conformity with the statute. *Sink v. Easter*, 284 N.C. 555, 202 S.E. 2d 138 (1973); *Harrison v. Hanvey*, 265 N.C. 243, 143 S.E. 2d 593 (1965); *Jones v. Jones*, 243 N.C. 557, 91 S.E. 2d 562 (1956).

"[W]here the notice is required to contain a short form of description of the property, it is sufficient if it clearly calls the attention of adjoining owners or others interested to the particular property intended and need not contain all of the elements of a full description. . ." 76 C.J.S., Registration of Land Titles, § 14a, p. 536.

G.S. 43-10 requires that the Clerk of Superior Court, at the time of issuing such summons, publish a notice of the filing thereof containing the names of the petitioners, the names of all persons named in the petition, together "with a short but accurate description of the land," and the relief demanded. To us, the description given by the respondent in his published notice was inadequate. A complete and adequate description was available to respondent. The record does not show any reason why a fuller description was not given. Appellees fall within the limitations of G.S. 43-26. Their motion was filed within twelve months from the date of the 15 September 1972 order of the clerk. *See State v. Johnson*, 278 N.C. 126, 179 S.E. 2d 371 (1971). The notice by publication was inadequate to give the notice required by statute. *Sears Roebuck & Co. v. Stockwell*, 143 F. Supp. 928 (D. Minn. 1956), cited by respondent, does not control the issue before us.

[2] On 26 November 1976, Clerk of Superior Court, W. J. Ward (Jarvis Ward) of Perquimans County filed his order which found:

"That neither Samuel E. Chesson nor Charles C. Edwards, Jr., Ruth J. Hoover and Harold M. Maness and wife, Buena B. Maness have certificates of title for the land in controversy heretofore described in Paragraphs 2 and 4, but all claim said property by, through or under common law deeds."

The following conclusion of law was entered:

"A. That based upon application of the common source doctrine and the fact that Charles C. Edwards, Ruth J. Hoover, Harold M. Maness and wife, Buena B. Maness have the elder, and therefore superior chain of title, Charles C. Edwards, Jr., Ruth J. Hoover, Harold M. Maness and wife, Buena B. Maness are the sole owners in fee simple of the land heretofore described in Paragraph 2 of the Findings of Fact.

B. That the original certificates of title issued to their predecessor in title, Richmond Cedar Works having been lost, Charles C. Edwards, Jr., Ruth J. Hoover, Harold M. Maness and wife, Buena B. Maness are entitled to have said original certificates cancelled and new certificates of title issued in their names pursuant to N.C. Gen. Stat. Sec. 43-17.1.

WHEREUPON IT IS ORDERED, ADJUDGED AND DECREED THAT:

1. Charles C. Edwards, Jr., Ruth J. Hoover, and Harold M. Maness and wife, Buena B. Maness are the owners in fee simple of the land heretofore described in Paragraph 2 of the Findings of Fact and in the respective Petitions heretofore filed; and

2. The original certificates of title, heretofore described in Paragraph 4 of the Findings of Fact, issued to Richmond Cedar Works be cancelled by the Register of Deeds of Gates County; and

3. The Register of Deeds of Gates County is hereby ordered to issue new certificates of title to the land heretofore described in Paragraphs 2 and 4 in the names of Charles C. Edwards, Jr., Ruth J. Hoover and Harold M. Maness and wife, Buena B. Maness.

This 26 day of November, 1976."

At this hearing, the respondent and the appellees were required to prove their title to the land in question. Neither party, at this point, had a certificate of title under the Torrens Law. Contested proceedings for the registration of land titles under the Torrens Law are triable in the mode prescribed by subdivisions (a), (b), and (c) of G.S. 43-11. The same rules for proving title apply in these actions as in ejectment and other actions involving the establishment of land titles. *Paper Co. v. Cedar Works*, 239 N.C. 627, 80 S.E. 2d 665 (1954).

The court found facts in part as follows:

"The Registered Owner aforesaid, Richmond Cedar Works, has made two deeds of conveyance to said Registered Lands, heretofore described in Paragraphs 2 and 4; same being identical lands, without the surrender of the certificates of title issued to it as set out in Paragraph 4; one being to

Charles C. Edwards, Jr., Ruth J. Hoover, and Harold M. Maness and wife, Buena B. Maness's predecessor in title and one being to Samuel E. Chesson. The original certificates of title, issued to Richmond Cedar Works and above referred to in Paragraph 4, have been lost and cannot after due diligence, be found.

Richmond Cedar Works is the common source of title through which the parties hereto derive and assert title to the lands heretofore described in Paragraphs 2 and 4."

The record clearly shows a complete chain of title in the appellees starting with a deed from Richmond dated 23 July 1941 and other deeds in the chain of title to the time the case was heard by the Clerk of Superior Court of Perquimans County. Respondent does not contest this elder chain of title. Respondent's chain of title is clearly shown by a deed from Richmond to him dated 19 May 1972. The appellees' deed from Richmond is 31 years older than the respondent's deed.

Chief Justice Bobbitt stated for our Supreme Court in *King v. Lee*, 279 N.C. 100, 105, 181 S.E. 2d 400, 403 (1971):

"Petitioners, in attempting to prove the alleged tenancy in common, relied upon the sixth method stated in *Mobley v. Griffin*, 104 N.C. 112, 10 S.E. 142 (1889), that is, the common source doctrine. This doctrine is aptly stated by Justice Battle in *Gilliam v. Bird*, 30 N.C. 280, 283 (1848), as follows: '(W)henever both parties claim under the same person, neither of them can deny his right, and then, as between them, the elder is the better title and must prevail.' This statement is quoted with approval in *Stewart v. Cary*, 220 N.C. 214, 221, 17 S.E. 2d 29, 33 (1941), where many cases relating to the common source doctrine are cited. See Annotation, 'Comment Note. — Common Source of Title Doctrine,' 5 A.L.R. 3d 375 (1966)."

We hold that the evidence was sufficient and proper to establish appellees' claim of title to the land in question under the common source doctrine and that a new certificate of title was properly issued to the appellees.

Judgment affirmed.

Judges VAUGHN and MARTIN (Harry C.) concur.