JEREMIAH M. KESLER, Adm'r of the estate of HENRY C. UTLEY *vs.* WILLIAM A. SMITH.

1. To give operation to the maxim *leges postoriores, priores contrarias abrogant* the latter law must be in conflict with the former, therefore, when a later statute is almost *in ipsissimis verbis*, with a former one, *held*, that there was no re' peal of the former.

2. The statute, Rev. Code, chap 1, sec's 9, 10, 11, is not repealed by Acts 1868-'69, chap. 113, sec's 70, 71, 72, 114.

3. In actions to recover damages for an injury resulting in death, brought under our act, the correct rule touching the *quantum* of damages, is, the reasonable expectation of pecuniary advantage, from the continuance of the life of the deceased.

4. In such actions, evidence of the number of children left by the deceased, is inadmisible as irrelevant, and calculated to mislead the jury.

5. In such actions, it is competent to prove the age, strength, health, skill, industry, habits and character of the deceased, with a view to arrive at his pecuniary worth to his family.

The case of *Collier* v. *Arrington, Phil. L.*, 356, cited and approved.

This was an action of trespass, *vi et armis*, commenced under the old system under the provisions of chap. 1, sections 9, 10, 11 of the Rev. Code, brought by the plaintiff as the administrator upon the estate of one Henry C. Utley, for the unlawful killing, by defendant, of his intestate, and was tried at July Special Term 1871, of Cabarrus Superior Court, before His Honor, Judge Moore, and a jury. The defendant in open Court, admitted the unlawful killing, and the *sole point* at issue and tried, was, the question of damages.

Many questions were raised, but those, only, are noticed upon which the opinion proceeds.

The plaintiff offered to show the number of the deceased's family at the time of his death ; this evidence was objected to by the defendant, but admitted by the Court.

The defendant proposed to prove that the deceased was often engaged in fights, &c., this was objected to by plaintiff and rejected by the Court.

It was in evidence that the deceased furnished supplies to his family, and was seen carrying them provisions, &c. In reply, the defendant offered to show that the deceased was in the habit, of trading with slaves, unlawfully. This evidence was objected to by the plaintiff and rejected by the Court. There was a verdict for $1,500 for the plaintiff and the defendant appealed.

*Fowle* and *W. H. Bailey* for the plaintiff.

*Dowd* (with whom was *J. H. Wilson*) for the defendant, filed the following brief:

The measure of damages is the *pecuniary loss* resulting from the wrongful killing. It was not to give damages *punitory*, or by way of *solatium* for wounded feelings, &c. See *Collier v. Arrington, Phil. Law,* 356, and cases cited in Mr. Moore's brief. Also *Penn. R. R. Co.,* v. *Butler,* 57 *Penn.,* 335. The rule for estimating damages, as laid down in the last mentioned case, being "to take into consideration the age of the deceased, and his ability, and his disposition to labor, and his habits of living and expenditures."

As to effect of repeal of statute under which cause of action is given, without saving clause, see *Gov.* v. *Howard,* 1 *Murphy,* 465, *Pond* v. *Horne,* 65 *N. C. Rep.,* 84, 2 *Blackstone,* 436. The statute '68–9 gives cause of action in similar, but not, in the *same cases* as Rev. Code.

READE, J. The statute upon which this action is founded, is as follows :

"9. Whenever the death of a person shall be caused by the wrongful act of another person, and the wrongful act is such

as would have entitled the party injured to maintain an action, and recover damages in respect thereof, if death had not ensued, then and in every such case, the person who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances, as amount in law, to felony.

10. Every such action shall be brought by, and in the name of the personal representative of the deceased, and the amount recovered shall be disposed of, according to the statute for the distribution of personal property in case of intestacy, and in every such action, the jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death, &c.

11. The amount recovered in every such action shall be for the exclusive and sole benefit of the widow and issue of the deceased, in all cases where they are surviving." *Rev. Code,* ch. 1, *Ss.* 9, 10, 11.

In 1868–'69 the foregoing statute was, in substance, and almost in the same words, embodied in an "Act concerning the settlement of the estates of deceased persons." And the same Act repeals "all laws and clauses of laws in conflict with the provisions of this Act."

*Acts* 1868–'69, *ch.* 113. Secs. 70, 71, 72, 114.

The defendant insists, that the Act of 1868–'69, which was subsequent to the cause of action in this case, repeals the Rev. Code under which the action was brought, and that leaves the case to be considered, as if the *Rev. Code* had not existed, and so the action could not be maintained.

It is not necessary for us to decide what would be the effect of repealing a statute, under which a cause of action had arisen, pending the action. See *Rev. Code, ch.* 108 ; because we are of the opinion that the Act of 1868–'69, does not have the effect of repealing the Revised Code Statute, because they are not in conflict.

JEREMIAH M. KESLER *v.* WILLIAM A. SMITH.

The English Statute, 9–10, *Vic. c.* 93, is substantially the the same, as ours. It is not precisely as definite as ours, as to the rule of damages, inasmuch as our Statute specifies "*pecuniary injury,*" whereas the English Statute also makes it the duty of the jury to apportion the damages among the beneficiaries, which ours does not.

Although the English Statute omits, *pecuniary,* yet the rule of damages, which the Courts have laid down, is "the reasonable expectation of pecuniary advantage, from the continuance of the life of the deceased." We have carefully examined the English cases, and although the rule is not laid down in all of them, in precisely these words, yet, in substance, it is ; and *the rule* may now *f*said to be *settled* be as above. *Dalton* v. *the South Eastern Railway Co.,* 93 *Eng. C. L. R.,*296. *Pym, adm'r* v. *The Great Northern R. W. Co.,* 116 *Eng. C. L. R.,* 396.

It is well settled, that nothing is to be allowed, as a solatium, or as a punishment.

The same rule is laid down *arguendo,* in *Arrington* v. *Collier, Phil. R.,* 355, which is the only case, in which it has been discussed, in our Court. We adopt the rule stated above.

To bring this case under the rule, the principal enquiry is, "what was the reasonable expectation of pecuniary advantage to the family of the deceased from the continuance of his life ?"

On the trial below, the plaintiff offered to prove the number in the family of the deceased at the time of his death ; and the evidence was admitted. And this was the first error.

We were informed upon the argument, that the idea was, that the condition and number of the family of the deceased, ought to affect the damages, inasmuch as it required more to support a large family than a small one, and that if two men were killed, of precisely the same capacity for labor, and of the same occupation and thrift, and one left a family of ten, and the other of five, the large family would be entitled to as much again as the small.

This would be so, if the necessities of the family, and not the value of the life, of the deceased, were the rule. But we have seen, that is not the rule. If a man's nett earnings are but $100 per annum, that is his pecuniary value to his family, whether large or small. It was said to be important in another view; it was insisted that the deceased by his earnings supported his family, and that by ascertaining how many there were in the family, and then estimating what it was worth, or what it would cost to support each, would give the amount necessary to support the whole, and that would give the value of his earnings.

The answer is, that this would involve many enquiries as to what the family contributed to their own support, and in what style they lived, and what was the quality of their food and raiment, &c. And that a much more direct and accurate way, was to estimate the value of his labor, or the amount of his earnings. If it was supposed, as it seemed to be, that the English authorities allowed of enquiries into the number and condition of the family, it was because there the jury have to apportion the damages to each member of the family, dividing it out, and, if need be, giving more to one than another. But such is not the case here.

It seems that the deceased was a common laborer, and that his only legitimate earnings, were from his labor; and, in answer to proof on the part of the plaintiff, that the deceased "furnished supplies to his family, and was seen carrying them provisions, &c.," the defendant offered to show that the deceased was in the habit of trading with slaves, unlawfully. And the defendant also offered to show that the deceased "was often engaged in fighting," and "was often indicted." This evidence was ruled out, and the question is, was it competent.

What would have been the reasonable expectation of pecuniary advantage from the continuance of the life of the deceased, if he had been an industrious, peaceable, honest man? And what would it have been, if he had been an idle, quarrel-

some, violent, dishonest man ?  Would the expections in either case have been the same ?  If so, the evidence was immaterial, and was properly ruled out.  If not, then there was error.  It was competent to enquire into his age, his strength, his health, his skill and industry, his habits and his character, the end of all, being, to get at his pecuniary worth to his family—how much nett income might be reasonably expected.

THERE IS ERROR.                        *Venire de novo.*