BURKETT PURNELL, SR., ADMINISTRATOR OF CLEMMONS PURNELL, v.
ROCKINGHAM RAILROAD COMPANY.

(Filed 25 November, 1925.)

**1. Negligence—Killing of Deceased—Damages—Statutes.**

At common law, a civil action would not lie against one who had negligently caused the death of another, but now exists to the personal representative of the deceased by statute. C. S., 161.

**2. Same—Measure of Damages.**

The measure of damages for negligently causing the death of another, is the present value of the net income to the estate, to be ascertained by deducting the cost of living of the deceased, and his necessary personal expenditures, from the gross income to be ascertained from his expectancy of life, of which the mortuary tables may be received in evidence, with proof as to the condition of his previous health, etc.

**3. Same—Instructions.**

Construing the charge as a whole from its related parts: *Held*, an instruction is not erroneous as to the measure of damages for the negligent killing of another, which charges that his probable expenditures, etc., are to be deducted from the gross income when from connected parts of the charge the jury must reasonably have understood that it was the necessary personal expenses which they should deduct.

APPEAL by the plaintiff from *Bryson, J.,* at June Term, 1925, of RICHMOND.

The action was brought to recover damages for the wrongful death of the plaintiff's intestate, who at the time of his injury was a boy ten years of age, of bright mind; of good health, habits and character; and of fine physique. The issues were answered as follows:

1. Was the injury and death of the plaintiff's intestate, Clemmons Purnell, caused by the negligence of the defendant as alleged in the complaint? Answer: Yes.

2. Did the said Clemmons Purnell by his own negligence contribute to and cause his own injury and death as alleged in the answer? Answer: No.

3. Was the injury and death of Clemmons Purnell caused by the negligence of Burkett Purnell as alleged in the answer? Answer: No.

4. What damage, if any, is plaintiff entitled to recover of the defendant? Answer: $1,000.

The plaintiff's motion to set aside the answer to the fourth issue for insufficiency of the damages was denied and the plaintiff excepted. There was a judgment in his favor of $1,000. The plaintiff assigns as error two instructions which were given by the court as to the measure of damages:

"1. I give you the rule as to award and damage for the wrongful death applicable in the State of North Carolina and direct you to observe it and none other. Where one's death is caused by the negligent acts of another, proximately producing it, the amount of award or the damage is subject to the following rule: The award is the present value of the net pecuniary worth of the deceased, to be ascertained by deducting the cost of his own living and expenditures from the gross income based upon his life expectancy.

"2. After subtracting his personal expenditures from that amount they thus reach what is known in law as his net income, and having deducted this amount, then they determine what is the present pecuniary value of such an amount, and having done so, the sum arrived at would be the amount of the award."

*H. F. Seawell for plaintiff.*
*Bynum & Henry for defendant.*

ADAMS, J. At common law a civil action could not be maintained against one who had negligently caused the death of another (*Craig v. Lumber Co.,* 189 N. C., 137), but in 1854 the Legislature enacted a statute authorizing suit by the personal representative of any person whose death had been caused by neglect, default, or wrongful act. Laws

of N. C., 1854, ch. 39. It was provided in section 3 that the jury might give such damages as they should deem fair and just, having regard to the pecuniary injury resulting from the wrongful death. The sub-stance of this statute was brought forward by the Legislature of 1868-'9 (ch. 113), and it was enacted that the plaintiff might recover "such dam-ages as are a fair and just compensation for the pecuniary injury re-sulting from such death." This is the language of the statute now in force. C. S., 161.

In *Kesler v. Smith,* 66 N. C., 154, *Reade, J.,* construing the act of 1854, stated the rule for damages to be the "reasonable expectation of pecuniary advantage from the continuance of the life of the deceased." This statement was approved in *Burton v. R. R.,* 82 N. C., 505; but in *Pickett v. R. R.,* 117 N. C., 639, this Court disapproved an extension of the rule as made by the trial judge and held that the measure of damages for the loss of a human life is the present value of the net income to be ascertained by deducting the cost of living and expenditures from the gross income, and that the jury could not allow more than the present value of the accumulation arising from such net income based upon the expectancy of life. This ruling was approved in *Benton v. R. R.,* 122 N. C., 1007, in which *Kesler v. Smith, supra* and *Burton v. R. R., supra,* were cited as authorities, although there is an intimation in *Bradley v. R. R.,* 122 N. C., 972, that the opinion in *Kesler's case* followed the English rule. However, in *Poe v. R. R.,* 141 N. C., 525, *Walker, J.,* sug-gested that *Pickett's case* stated more definitely than *Kesler's case* the proper method of calculation. It will be noted that in *Pickett's case* the words "deducting the cost of living and expenditures from the gross income" were approved by this Court on appeal. This identical language or the substance of it was reiterated and confirmed in *Mendenhall v. R. R.,* 123 N. C., 275; *Russell v. Steamboat Co.,* 126 N. C., 961; *Watson v. R. R.,* 133 N. C., 188, and in *Gerringer v. R. R.,* 146 N. C., 32.

It is true that in *Carter v. R. R.,* 139 N. C., 499, the charge was criticised because it directed the jury to deduct from the gross income such expenditures as they should find the deceased would have made; and it is said that the true rule requires the jury to deduct only the reasonably necessary personal expenses of the deceased, taking into con-sideration his age, manner of living, etc. The use of the word "expen-ditures" was not sanctioned because in the absence of any explanation it was thought the jury might have understood the word to embrace the amount expended by the deceased for the benefit of his family or those dependent upon him. See, also, *Roberson v. Lumber Co.,* 154 N. C., 328, and *Rigsbee v. R. R., ante,* 234. The objection to the use of the word "expenditures" as stated in *Carter v. R. R., supra,* is met in the case at bar by the following specific instruction of the trial judge: "Where one

comes to his death by actionable negligence upon the part of another, the jury, in considering the award of damages, if they reach such consideration, will, first, from the testimony determine the probable life expectancy of the deceased, the probable number of years that he would have lived had death not cut short the thread of life. Having done so, then from all the facts disclosed by the testimony, the jury will determine the probable amount that he would have made during his probable life expectancy and when they have done this, they have reached what the law styles as his gross income. Having determined the amount of the gross income in this way, then they next should proceed to inquire what would have been his reasonable personal expenses as disclosed by the evidence. In order to arrive at this amount, they again consider what was his probable life expectancy and what he spent upon himself or would likely have spent upon himself; they then reach the amount of the probable amount of his personal expenditures." By a fair interpretation of this instruction it will be seen that the use of the word "expenditures" could only have been understood as embracing the personal expenses of the deceased and not expenditures for his family or those dependent upon him. Thus the instruction is brought directly in line with the authorities affirming the decision in *Pickett v. R. R., supra.* The first exception therefore must be overruled.

With the respect to the second exception the appellant contends that the trial judge instructed the jury to ascertain the gross earnings and the personal expenditures and to subtract the latter from the former, and in this way to find the net income of the deceased; then to deduct the net income from something that is not defined, and to determine the present pecuniary value of such amount by a method not stated; and finally that the sum thus arrived at would be the answer to the fourth issue.

In our opinion the instruction is not reasonably susceptible of this interpretation. The words "and having deducted this amount" evidently refer to the personal expenses of the deceased and not to the net income; and as indicated the deduction was to be made, not from an unknown quantity, but from the gross income. The charge, of course, must be considered in its entirety, in the connected way in which it was given and on the presumption that the jury did not disregard it; and if it presents the law fairly and correctly it will afford no ground for reversal, though expressions standing alone may be technically incorrect. *White v. Hines,* 182 N. C., 275; *Sutton v. Melton,* 183 N. C., 369; *Rierson v. Steel Co.,* 184 N. C., 363; *S. v. Dill,* 184 N. C., 645. We find

No error.