IN THE MATTER OF THE ESTATE OF WINNIE ANN IVES, DECEASED, T. B. IVES, ADMINISTRATOR.

(Filed 9 April, 1958)

**1. Executors and Administrators § 21—**

Where there is dispute as to the proper distribution of funds in the hands of the administrator, he may properly petition the court, upon notice to the interested parties, for the advice and instruction of the court in the matter.

**2. Death § 3—**

Action for wrongful death exists in this State solely by virtue of statute. G.S. 28-173, G.S. 28-174.

**3. Death § 9—**

While only the personal representative may maintain an action for wrongful death, the recovery is not an asset of the estate in the usual acceptation of the term, but the personal representative holds the recovery as trustee for the distributees of the estate who are the real parties in interest. G.S. 28-173.

**4. Actions § 5—**

The common law maxim that a person will not be allowed to take advantage of his own wrong has been adopted as public policy in this State.

**5. Same: Death § 9—**

The right of a person to share in the distribution of recovery in an action for wrongful death will be denied where the death of the decedent is caused by such person's negligence.

**6. Death § 10—**

An administrator, provided he acts in good faith and exercises the care of an ordinarily prudent man, has the right to compromise the statutory right of action for wrongful death with the person liable, either before or after the action is brought, and the money received in settlement stands on the same basis as if it had been recovered by action.

**7. Actions § 5: Death § 9— Where settlement for wrongful death is made on basis of a distributee's negligence, such distributee will not be permitted to share therein.**

Intestate, while riding as a passenger in an automobile owned and driven by her son, was killed in a collision. The administrator and the son's insurer compromised claim for wrongful death in consideration of the release by the administrator from all claims and demands against the son and insurer arising out of the accident. The policy provided that insurer might make such investigation, negotiation and settlement of any claim or suit as it deemed expedient. The son's answer to the administrator's petition did not allege that he had sued the driver of the other car involved in the collision or that he had made any claim or demand against such driver for damage to his automobile. *Held:* Notwithstanding the absence of any finding that the son was negligent, and notwithstanding that the release stated that all parties released denied liability, it is manifest that the settlement was paid as compensation on the basis that the son, by his wrongful act, neglect or default, was responsible for intestate's death, and therefore the son, even though he did not know of the release, will not be permitted to share in the settlement.

APPEAL by Sam B. Ives from *Stevens, J.,* September Civil Term 1957 of LENOIR.

Petition by T. B. Ives, administrator of the estate of his mother, Winnie Ann Ives, deceased, for advice and instruction.

Winnie Ann Ives came to her death as the result of injuries received in the collision of an automobile, owned and operated at the time by her son, Sam B. Ives, and in which she was riding as a passenger, with another automobile having a housetrailer attached operated by one Jeffrey, a nonresident of this state, on U. S. Highway No. 258 about 10 miles south of Kinston.

· Winnie Ann Ives died intestate on 31 January 1954, and on 29 July 1954 letters of administration were issued to her son, T. B. Ives, by

the Clerk of the Superior Court of Lenoir County.

At the time of the collision Sam B. Ives was the insured under a public liability insurance policy covering his automobile, issued to him by Farm Bureau Mutual Automobile Insurance Company of Columbus, Ohio, which was in full force and effect. The policy limited liability to $10,000.00 for each person, to $20,000.00 for each accident, and to $500.00 for funeral expenses for each person.

The policy contains these provisions:

### "COVERAGE F - Bodily Injury Liability

"To pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by the accident and arising out of the ownership, maintenance or use of the automobile.

### "COVERAGE G - Medical Payments

"To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury, sickness or disease, caused by accident, while in or upon, entering or alighting from the automobile if the automobile is being used by the Named Insured or with his permission."

The policy contains this further provision:

"As respects the insurance afforded by the other terms of this policy under coverages E and F the Company shall:

"(a) Defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

Following his appointment as administrator of the estate of Winnie Ann Ives, and in his capacity as such, T. B. Ives and the Farm Bureau Mutual Automobile Insurance Company entered into negotiations for a compromise settlement of all claims which he as administrator had, or might have, against Sam B. Ives for the death of his intestate resulting from injuries received by her, while a passenger in Sam B. Ives' automobile operated by him, when it had a collision with the Jeffreys' automobile. As a result of these negotiations the Insurance Company paid to T. B. Ives, as administrator, $6,500.00 under Coverage F of the policy, and $500.00 under Coverage G of the policy, and T. B. Ives, as administrator, executed and delivered to the In-

surance Company the following Release, of which we copy only the relevant parts:

### "RELEASE OF ALL CLAIMS

"FOR AND IN CONSIDERATION OF the payment to me/us of the sum of ($6500.00) - - Sixty-five Hundred and No/100 - - Dollars and other good and valuable consideration, I/we, being of lawful age, have released and discharged, and by these presents do for myself/ourselves, my/our heirs, executors, administrators and assigns, release, acquit and forever discharge Sam Ives, Jr., and any and all other persons, firms and corporations of and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses, compensation, and all consequential damage on account of, or in any way growing out of, any and all known and unknown personal injuries and death and property damage resulting or to result from accident that occurred on or about the 31st day of January, 1954, at or near U. S. Highway 258, 10 miles south of Kinston, North Carolina.

### IRRELEVANT PARAGRAPH OMITTED

"I/we understand that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of the persons, firms and corporations hereby released by whom liability is expressly denied.

"This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital."

Winnie Ann Ives was a widow at the time of her death. She left surviving her four sons, T. B. Ives, Walter Egbert Ives, John Lewis Ives and Sam B. Ives, who are her sole heirs at law, and each of whom was more than 21 years of age at the time of her death.

No funds or property came into the hands of the administrator, except the $7,000.00 in money from the settlement with the insurance company. From this $7,000.00 the administrator has paid attorneys' fees and other small amounts, has made advancements to Walter Egbert Ives, John Lewis Ives and himself, and now has left of the $7,000.-00 the sum of $2,273.64.

The administrator by petition requested the court to advise and instruct him as to how the $7,000.00, less attorneys' fees and the costs of administration of the estate, shall be disbursed.

Sam B. Ives filed an answer to the petition of the administrator. At the hearing of the petition and answer by the Clerk of the Superior

Court of Lenoir County, the administrator and Sam B. Ives were represented by counsel. The facts found by the Clerk relevant to this appeal have been set forth above. Upon the facts as found by him the Clerk adjudged that Sam B. Ives is not entitled to share in the $7,000.00 paid by the Insurance Company, and that the net proceeds from this sum be divided equally between T. B. Ives, Walter Egbert Ives and John Lewis Ives. To which judgment Sam B. Ives excepted, and appealed to the Judge of the Superior Court.

The appeal came on to be heard before the Honorable Henry L. Stevens, Jr., Judge Presiding at the September Civil Term 1957 of the Superior Court of Lenoir County. Judge Stevens, after considering the entire record, including the evidence, the findings of fact, conclusions of law and judgment of the Clerk, and the argument of counsel on both sides, adopted as his own the findings of fact and conclusions of the Clerk, and entered judgment affirming the Clerk's judgment.

From which judgment Sam B. Ives appealed to the Supreme Court.

*White & Aycock and Harvey W. Marcus for Sam B. Ives, Respondent, Appellant.*

*Sutton & Greene for T. B. Ives, Administrator, Petitioner, Appellee.*

PARKER, J.　The petitioner has adopted the proper procedure to secure judicial direction as to the method of distribution of the $7,000.00 paid to him by the Farm Bureau Mutual Automobile Insurance Company. *In re Estate of Poindexter,* 221 N.C. 246, 20 S.E. 2d 49; *In re Estate of Mizzelle,* 213 N.C. 367, 196 S.E. 364; *In re Stone,* 173 N.C. 208, 91 S.E. 852.

At common law no action would lie to recover damages for the wrongful death of a person. *Armentrout v. Hughes,* 247 N.C. 631, 101 S.E. 2d 793. The first innovation upon the common law, in this respect, was brought about by the enactment of 9 and 10 Vict., Ch. 93, which authorized recoveries in such cases. This statute is commonly called Lord Campbell's Act, because he, who had the rare distinction of having been successively Lord Chief Justice and Lord Chancellor of England, was its author and mainly instrumental in its adoption. *Hartness v. Pharr,* 133 N.C. 566, 45 S.E. 901. In North Carolina a right of action to recover damages for wrongful death is given by G.S. 28-173, and 28-174, and therefore in this jurisdiction the action for wrongful death exists only by virtue of these statutes. *Lamm v. Lorbacher,* 235 N.C. 728, 71 S.E. 2d 49.

G.S. 28-173, "Death by wrongful act; recovery not assets; dying declarations," reads in part: "The amount recovered in such action is not liable to be applied as assets, in the payment of debts or legacies, except as to burial expenses of the deceased, but shall be disposed of as

provided in this chapter for the distribution of personal property in case of intestacy."

This Court said in *Lamm v. Lorbacher, supra:* "The right of action is for the personal representative of the deceased only. 'The right of action for wrongful death, being conferred by statute at death, never belonged to the deceased, and the recovery is not assets in the usual acceptation of the term.' *Broadnax v. Broadnax,* 160 N.C. 432, 76 S.E. 216; *Hood v. Telegraph Co.,* 162 N.C. 92, 77 S.E. 1094; 28 N.C. Law Review 106."

This Court said in *Hartness v. Pharr, supra:* "It must be borne in mind that whatever the varying forms of the statutes may be, the cause of action given by them, and also by the original English statute, was in no sense one which belonged to the deceased person or in which he ever had any interest, and the beneficiaries under the law do not claim by, through, or under him, and this is so although the personal representative may be designated as the person to bring the action. *Baker v. R. R.,* 91 N.C., 308. The latter does not derive any right, title, or authority from his intestate, but he sustains more the relation of a trustee in respect to the fund he may recover for the benefit of those entitled eventually to receive it, and he will hold it when recovered actually in that capacity, though in his name as executor or administrator, and though in his capacity as personal representative he may perhaps be liable on his bond for its proper administration. *Baker v. R. R., supra.*"

In an action to recover damages for wrongful death the real party in interest is the beneficiary under the statute for whom recovery is sought, and not the administrator. *Davenport v. Patrick,* 227 N.C. 686, 44 S.E. 2d 203.

"It is a maxim of law, recognized and established, that no man shall take advantage of his own wrong; and this maxim, which is based on elementary principles, is fully recognized in courts of law and equity, and, indeed, admits of illustration from every branch of legal procedure." Broom's Legal Maxims, Tenth Ed., 191.

This maxim embodied in the common law, and constituting an essential part thereof, is stated in the text books and reported cases. It has its foundation in universal law administered in all civilized lands, for without its recognition and enforcement by the courts their judgments would rightly excite public indignation. This maxim has been adopted as public policy in this state and we have decided in many cases instituted to recover damages for wrongful death that no beneficiary under the statute for whom recovery is sought will be permitted to enrich himself by his own wrong. *Davenport v. Patrick, supra; Pearson v. Stores Corp.,* 219 N.C. 717, 14 S.E. 2d 811; *Goldsmith v. Samet,* 201 N.C. 574, 160 S.E. 835; *Harton v. Telephone Co.,* 141 N.C. 455, 54 S.E.

299; *Davis v. R. R.* 136 N.C. 115, 48 S.E. 591. The right of a person otherwise entitled to receive the money paid for wrongful death, or to share in the distribution of such a sum paid, will be denied where the death of the decedent was caused by such person's negligence. *Davenport v. Patrick, supra; Goldsmith v. Samet, supra.*

An administrator *sui juris* has the power, provided he acts in entire good faith without any fraud, and exercises the care of an ordinarily prudent person, to compromise a purely statutory cause of action for wrongful death. *McGill v. Freight,* 245 N.C. 469, 96 S.E. 2d 438; 16 Am. Jur., Death, Sections 53 and 159; 25 C.J.S., Death, pp. 1146-7. This necessarily implies that he may compromise and settle claims arising under a statute giving a cause of action for wrongful death with the person liable, either before or after the action is brought.

*In re Stone, supra,* was a proceeding to determine whether the compensation for wrongful death of an employee of a railroad company killed while engaged in interstate commerce was to be apportioned according to our statute of distribution. The money received was paid by compromise to the administratrix without action. The Court said: "The net sum received by the administratrix under the compromise and settlement with the railroad company stands on the same basis as if it had been recovered by action."

G.S. 28-173 gives a cause of action, "when the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured party had lived, have entitled him to an action for damages therefor. . . ."

A liability of the insurance company under Coverage F of the policy was to pay on behalf of Sam B. Ives, its insured, all sums which the insured shall become legally obligated to pay as damages for the death of a person arising out of the use of his insured automobile. The policy provided that under Coverage F "the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

It is manifest from the findings of fact that the insurance company paid the administrator $6,500.00 as compensation for his intestate's death in consideration of the administrator releasing, acquitting and forever discharging Sam B. Ives, its insured, and itself, from any and all actions, causes of action, claims and demands against its insured, and itself, by the administrator on account of his intestate's death, which claims and demands necessarily must have been made on the ground that Sam B. Ives, its insured, by his wrongful act, neglect or default was responsible for his intestate's death. Although there is no finding of fact that Sam B. Ives was negligent in the operation of his automobile, and although the release states that all parties released from liability deny liability, and though there is no finding of fact

that Sam B. Ives knew of the settlement, public policy and the law will not permit him to enrich himself as a beneficiary in the distribution of the very sum of money paid by his insurance company to the administrator to release, acquit and forever discharge him of any cause of action, demand or claim against him by the administrator for the wrongful death of his intestate.

These facts are significant: Sam B. Ives filed an answer to the administrator's petition alleging he was not negligent, and that his mother's death was caused by the sole proximate negligence of the driver of the other automobile. It is reasonable to infer that in the collision Sam B. Ives' automobile was damaged. However, he has no allegation in his answer that he had sued the other driver, or that he had made any claim or demand against such driver for damage to his automobile. At the hearing below the administrator testified: Sam B. Ives did not, and offered no evidence. Sam B. Ives makes no contention that the settlement should be upset, but contends that he should share in its proceeds.

Sam B. Ives in his brief quotes a dictum from the case of *Legette v. Smith*, 226 S. C. 403, 85 S.E. 2d 576, which dictum cites first *Minasian v. Aetna Life Ins. Co.*, 295 Mass. 1, 3 N.E. 2d 17. The *Minasian* case is no authority for the question presented in the instant proceeding, because in that case the plaintiff had a property right as beneficiary in a policy of life insurance on the life of his wife, and the question was how far culpability for her death deprived him of that property right. See *Arnold v. Jacobs*, 319 Mass. 130, 65 N. E. 2d 4.

The crucial findings of fact necessary to decide this appeal are amply supported by the stipulations of the parties and the evidence, and these findings of fact support the judgment.

The judgment of Judge Stevens is

Affirmed.