ANTHONY MICHAEL DiDONATO, AS ADMINISTRATOR OF THE ESTATE OF JOSEPH EDWARD DiDONATO v. WILLIAM J. WORTMAN, JR., M.D., AND JOHN T. HART, M.D.

No. 280A86

(Filed 28 July 1987)

**1. Death § 3— wrongful death action—viable fetus as "person"**

A viable fetus is a "person" within the meaning of the N.C. Wrongful Death Act, N.C.G.S. § 28A-18-2. Therefore, an action could properly be maintained for the wrongful death of a stillborn child.

**2. Death § 7— wrongful death of fetus—damages recoverable**

Lost income damages normally available under N.C.G.S. § 28A-18-2(b)(4)a. cannot be recovered in an action for the wrongful death of a stillborn child. Nor may damages normally available under N.C.G.S. § 28A-18-2(b)(4)b. and c.—loss of services, companionship, advice and the like—be recovered in an action for the wrongful death of a viable fetus. However, damages for pain and suffering of a decedent fetus are recoverable if they can be reasonably established, and medical and funeral expenses, as well as punitive and nominal damages, may be allowed where appropriate.

**3. Death § 3— wrongful death of viable fetus—joinder with parents' claims**

An action for wrongful death of a viable fetus must be joined with any claims based on the same facts brought by the decedent's parents in their own right.

Justice MARTIN concurring in part and dissenting in part.

Justice MITCHELL joins in this concurring and dissenting opinion.

Justice WEBB dissenting.

APPEAL by plaintiff from the decision of a divided panel of the Court of Appeals, reported at 80 N.C. App. 117, 341 S.E. 2d 58 (1986). The Court of Appeals affirmed an order entered by *Grist, J.,* at the 17 July 1985 Civil Session of MECKLENBURG County Superior Court, dismissing plaintiff's claim for the wrongful death of a fetus pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). Heard in the Supreme Court 11 December 1986.

*James, McElroy & Diehl, P.A., by Gary S. Hemric and Judith E. Egan, for plaintiff-appellant.*

*Golding, Crews, Meekins & Gordon, by John G. Golding and Andrew W. Lax, for defendant-appellees.*

*North Carolina Academy of Trial Lawyers, by Douglas B. Abrams, amicus curiae.*

EXUM, Chief Justice.

This is an action for the wrongful death of a stillborn child. Plaintiff administrator alleges that defendant doctors provided prenatal care to the child's mother, Norma DiDonato. Defendants estimated that the child would be born on 10 October 1982. On 26 October 1982 the child had not yet been born, and Mrs. DiDonato underwent an examination that revealed a healthy fetal heartbeat. Four days later the heartbeat had stopped and Mrs. DiDonato delivered a stillborn baby by Cesarean section. Plaintiff alleges that defendants' negligence was a proximate cause of the child's stillbirth.

The sole question presented by this appeal is whether N.C.G.S. § 28A-18-2, North Carolina's Wrongful Death Act, allows recovery for the death of a viable but unborn child. We conclude that it does, and we therefore reverse the decision of the Court of Appeals. We hold, however, that the damages available in any such action will be limited to those that are not purely speculative. In addition, we hold that the action for wrongful death of a viable fetus must be joined with any action based on the same facts brought by the decedent's parents.

I.

In North Carolina, as in most states, actions for wrongful death exist solely by virtue of statute. *In re Miles Estate,* 262 N.C. 647, 138 S.E. 2d 487 (1964). This Court's primary task, therefore, is to determine whether the state's wrongful death statute permits recovery for the death of a viable fetus.

Our Court of Appeals has twice denied actions for the wrongful death of a stillborn child under the current statute. *Yow v. Nance,* 29 N.C. App. 419, 224 S.E. 2d 292, *disc. rev. denied,* 290 N.C. 312, 225 S.E. 2d 833 (1976); *Cardwell v. Welch,* 25 N.C. App.

390, 213 S.E. 2d 382, *cert. denied,* 287 N.C. 464, 215 S.E. 2d 623 (1975). These holdings have not been disturbed by the General Assembly. We must be leery, however, of inferring legislative approval of appellate court decisions from what is really legislative silence. "Legislative inaction has been called a 'weak reed upon which to lean' and a 'poor beacon to follow' in construing a statute." 2A N. Singer, Sutherland Statutory Construction 407 (1984). "[It is] impossible to assert with any degree of assurance that [legislative inaction] represents (1) approval of the status quo, as opposed to (2) inability to agree upon how to alter the status quo, (3) unawareness of the status quo, (4) indifference to the status quo, or even (5) political cowardice." *Johnson v. Transportation Agency,* 480 U.S. ---, 94 L.Ed. 2d 615, 656 (1987) (Scalia, J., dissenting). We cannot assume that our legislators spend their time poring over appellate decisions so as not to miss one they might wish to correct. In fact, we have not found any evidence that the legislature has ever considered the particular problem before us in this case. Our inquiry, therefore, must focus on the words of the statute itself, the public policies underlying North Carolina's Wrongful Death Act, and common law principles governing its application. *See Summerfield v. Superior Court,* 144 Ariz. 467, 698 P. 2d 712 (1985); *Amadio v. Levin,* 509 Pa. 199, 501 A. 2d 1085 (1985) (Zappala, J., concurring).

### A.

The Wrongful Death Act states, in pertinent part:

(a) When the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured person had lived, have entitled him to an action for damages therefor, the person or corporation that would have been so liable . . . shall be liable to an action for damages . . . . The amount recovered in such action . . . shall be disposed of as provided in the Intestate Succession Act.

(b) Damages recoverable for death by wrongful act include:

(1) Expenses for care, treatment and hospitalization incident to the injury resulting in death;

(2) Compensation for pain and suffering of the decedent;

(3) The reasonable funeral expenses of the decedent;

(4) The present monetary value of the decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected:

a. Net income of the decedent,

b. Services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered,

c. Society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered;

(5) Such punitive damages as the decedent could have recovered had he survived, and punitive damages for wrongfully causing the death of the decedent through maliciousness, wilful or wanton injury, or gross negligence;

(6) Nominal damages when the jury so finds.

N.C.G.S. § 28A-18-2 (1984).

In plain English, an action for wrongful death exists if the decedent could have maintained an action for negligence or some other misconduct if he had survived. *Nelson v. United States*, 541 F. Supp. 816 (M.D.N.C. 1982). The real party in interest in any wrongful death action is the beneficiary for whom the recovery is sought. *In re Ives' Estate*, 248 N.C. 176, 102 S.E. 2d 807 (1958); *Davenport v. Patrick*, 227 N.C. 686, 44 S.E. 2d 203 (1947). In the case of a stillborn fetus, the beneficiaries of a wrongful death action will necessarily be the child's parents, unless they too are dead. *See* N.C.G.S. § 29-15(3) (1984).

[1] The facts in this case require us to determine whether the word "person" in the Wrongful Death Act includes a viable fetus.[1] The statute does not provide a clear-cut answer to this question,

---

1. The legislature has stated that "[t]he word 'person' shall extend and be applied to bodies politic and corporate, as well as to individuals, unless the context clearly shows to the contrary." N.C.G.S. § 12-3(6) (1986). We find this definition to be of no assistance in resolving the question before us.

but case law regarding recovery by children for fetal injuries is instructive. Tort claims brought by children to recover for fetal injuries are recognized in virtually every state, including North Carolina. *Stetson v. Easterling*, 274 N.C. 152, 161 S.E. 2d 531 (1968). It would be logical and consistent with these decisions, and would further the policy of deterring dangerous conduct that underlies them, to allow such claims when the fetus does not survive. Courts construing wrongful death statutes similar to N.C.G.S. § 28A-18-2 generally have concluded that a viable fetus is among the class of "persons" contemplated by the statute's authors. *See Amadio*, 509 Pa. at 224-25 n.4, 501 A. 2d at 1097-98 n.4 (Zappala, J., concurring).

It is unlikely that the legislature would want to preclude recovery for the death of a fetus when recovery for a fetal injury not resulting in death is permitted. The unborn child's parents are the real parties in interest here, and they seek compensation for the complete loss of, rather than mere injury to, their offspring. Surely the legislature would find their claim as compelling as that of a child who seeks to recover for a prenatally inflicted but nonfatal injury, the consequences of which could vary from moderate to severe.

The legislature, moreover, has indicated that for purposes of the wrongful death statute, a "person" is someone who possesses "human life." The preamble to the most recent revision of N.C.G.S. § 28A-18-2 stated:

WHEREAS, *human life* is inherently valuable; and

WHEREAS, the present statute is so written and construed that damages recoverable from a person who has caused death by a wrongful act are effectively limited to such figure as can be calculated from the expected earnings of the deceased, which is far from an adequate measure of the value of *human life;* Now, therefore, [the damages available for the wrongful death of a person were redefined].

1969 N.C. Sess. Laws ch. 215, preamble (emphasis added). A viable fetus, whatever its legal status might be, is undeniably alive and undeniably human. It is, by definition, capable of life independent of its mother. A viable fetus is genetically complete and can be taxonomically distinguished from non-human life forms. Again,

this is some evidence that a viable fetus is a person under the wrongful death statute.

We conclude that although the face of the wrongful death statute does not conclusively answer the question before us, case law concerning recovery for fetal injuries and the amending legislation quoted above both point toward acknowledging fetal personhood.

### B.

The Anglo-American history of wrongful death actions begins with the English case of *Baker v. Bolton*, 170 Eng. Rep. 1033 (1808), which held that at common law there was no right to an action for wrongful death. Parliament responded to this holding—albeit somewhat belatedly—by enacting a wrongful death statute known as Lord Campbell's Act in 1846. 9 & 10 Vict., ch. 93. All fifty American legislatures have since followed suit. Prosser & Keeton on Torts 945 (1984).

North Carolina adopted its first wrongful death statute shortly before the Civil War. Revised Code of 1854, ch. 1, § 9. At that time, this Court probably would not have recognized an action to recover for the death of a stillborn child. Until 1946, nearly all states denied recovery to persons who had suffered prenatal injuries, whether they survived or not. *Stetson*, 274 N.C. at 155, 161 S.E. 2d at 533. Following World War II, however, there occurred " 'the most spectacular abrupt reversal of a well-settled rule in the whole history of the law of torts.' " *Id.* (quoting Prosser on Torts § 56 (1964) ). Courts everywhere began allowing children to bring actions for injuries they suffered prior to birth. In 1949, Minnesota became the first state to recognize an action for wrongful death brought on behalf of a stillborn child. *Verkennes v. Corniea*, 229 Minn. 365, 38 N.W. 2d 838 (1949). Since then, more than thirty other states and the District of Columbia have recognized a cause of action for infants negligently or intentionally killed *in utero*. Comment, *Wrong Without a Remedy—North Carolina and the Wrongful Death of a Stillborn*, 9 Campbell L. Rev. 93, 110-11 (1986).

Before 1969, plaintiffs in North Carolina wrongful death actions could recover only "such damages as are a fair and just compensation for the pecuniary injury resulting from such death."

N.C.G.S. § 28-174 (superseded by N.C.G.S. § 28A-18-2(b)). The amount recoverable for this "pecuniary injury" was determined by deducting the probable cost of the decedent's living expenses from his probable gross income during the years he would have been expected to live had it not been for the defendant's tort. *Purnell v. Rockingham R.R. Co.*, 190 N.C. 573, 130 S.E. 313 (1925). This income-focused measure of damages severely limited recovery in many cases and eliminated it altogether in others. Often, evidence of pecuniary loss was unobtainable where the decedent was a child, homemaker or handicapped person. *Bowen v. Constructors Equipment Rental Co.*, 283 N.C. 395, 196 S.E. 2d 789 (1973). Wrongful death actions brought on behalf of stillborn infants were denied because the pecuniary injuries stemming from the prenatal death of a viable child were "sheer speculation." *Gay v. Thompson*, 266 N.C. 394, 402, 146 S.E. 2d 425, 429 (1966).

The legislature amended the Wrongful Death Act in 1969 by passing what was popularly known as "The Wife Bill." *Bowen*, 283 N.C. at 419, 196 S.E. 2d at 805. The purpose of the amendment was to permit recovery for losses unrelated to the decedent's actual monetary income. *See id.;* 1969 N.C. Sess. Laws ch. 215, preamble. Since 1969 the wrongful death statute has permitted beneficiaries to recover, in addition to lost income, compensation for the decedent's medical and funeral expenses, his pain and suffering, and loss of the decedent's services, protection, care, assistance, society, companionship, comfort, guidance, kindly offices and advice, among other things. N.C.G.S. § 28A-18-2(b). Punitive and nominal damages are also available. *Id.*

The legislature's 1969 expansion of the recovery permitted in wrongful death actions substantially undercut the rationale for this Court's earlier decision in *Gay*. Actions for the wrongful death of a fetus were disallowed in that case because the plaintiff could not prove "pecuniary injury"—that is, loss of income—without resorting to excessive speculation. Damages available under the amended statute are no longer limited, however, to lost income. The statute now permits recovery for such things as funeral expenses, which can be precisely calculated. Thus, it is plain that *Gay* should not control the outcome of this case.

The original purpose of our Wrongful Death Act was to change the common law rule of no recovery for the deaths of per-

sons victimized by tortfeasors. The statute provides compensation to beneficiaries of the decedent's estate for their loss, and helps to deter dangerous conduct. *See O'Grady v. Brown,* 654 S.W. 2d 904 (Mo. 1983). As Justice Cardozo said fifty years ago:

> Death statutes have their roots in dissatisfaction with the archaisms of the [common law rule of no liability]. It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied. There are times when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system.

*Van Beeck v. Sabine Towing Co.,* 300 U.S. 342, 350-51, 81 L.Ed. 685, 690 (1937) (quoted in *O'Grady,* 654 S.W. 2d at 909).

The language of our wrongful death statute, its legislative history, and recognition of the statute's broadly remedial objectives compel us to conclude that any uncertainty in the meaning of the word "person" should be resolved in favor of permitting an action to recover for the destruction of a viable fetus *en ventre sa mere.*[2] To the extent that the Court of Appeals' decisions in *Yow* and *Cardwell* are inconsistent with the holding in this case, they are overruled.

## II.

[2]   Although the Court has determined that N.C.G.S. § 28A-18-2 permits plaintiff to maintain an action for wrongful death in this case, the matter does not end there. Damages available under the statute are not automatic; they are what the legislature will permit the beneficiaries to recover *provided those damages can be proved.* The law disfavors—and in fact prohibits—recovery for damages based on sheer speculation. *Jackson v. Bumgardner,* 318 N.C. 172, 347 S.E. 2d 743 (1986); *Chesson v. Keickheffer Container Co.,* 216 N.C. 337, 4 S.E. 2d 886 (1939); D. Dobbs, Remedies 150-57

---

2. Defendants argue that statutes in derogation of the common law must be strictly construed. *See Swift & Co. v. Tempelos,* 178 N.C. 487, 101 S.E. 8 (1919). The Wrongful Death Act, however, is not in derogation of the common law. It is, rather, a remedial statute and should be "liberally construed, according to its intent, 'so as to advance the remedy and repress the evil.'" *Cape Lookout Co. v. Gold,* 167 N.C. 63, 83 S.E. 3 (1914).

(1973); E. Hightower, North Carolina Law of Damages 49 (1981). Damages must be proved to a reasonable level of certainty, and may not be based on pure conjecture. *Norwood v. Carter*, 242 N.C. 152, 156, 87 S.E. 2d 2, 5 (1955) ("No substantial recovery may be based on mere guesswork or inference . . . without evidence of facts, circumstances, and data justifying an inference that the damages awarded are just and reasonable compensation for the injury suffered."). Damage awards based on sheer speculation would render the wrongful death statute punitive in its effect, *Graf v. Taggert*, 43 N.J. 303, 204 A. 2d 140 (1964), which is not what the legislature intended. *Hall v. Southern R.R.*, 149 N.C. 108, 62 S.E. 899 (1908); *Christenbury v. Hedrick*, 32 N.C. App. 708, 234 S.E. 2d 3 (1977).

This Court has said that the "pecuniary injury" suffered by a stillborn child—that is, its loss of income—could be determined only through sheer speculation. *Gay v. Thompson*, 266 N.C. 394, 146 S.E. 2d 425. Before 1969 this was sufficient reason to deny the action entirely; the wrongful death statute, as it was then construed, did not permit recovery of any other damages. Now that the damages available under the statute have been expanded, the rationale for denying the action in *Gay* has largely evaporated—*but the lesson of that case concerning the income-related losses of stillborn children remains valid.* As another court has said in this context:

> On the death of a very young child . . . at least some facts can be shown to aid in estimating damages as, for example, its mental and physical condition.

> But not even these scant proofs can be offered when the child is stillborn. It is virtually impossible to predict whether the unborn child, but for its death, would have been capable of giving pecuniary benefit to its survivors. We recognize that the damages in any wrongful death action are to some extent uncertain and speculative. But our liberality in allowing substantial damages where the proofs are relatively speculative should not preclude us from drawing a line where the speculation becomes unreasonable.

*Graf*, 43 N.J. at 310, 204 A. 2d at 144. When a child is stillborn we can know nothing about its intelligence, abilities, interests and other factors relevant to the monetary contribution it might—or

might not—someday have made to the beneficiaries in a wrongful death action. A jury attempting to calculate an award for such damages would be reduced to "sheer speculation." *Gay*, 266 N.C. at 402, 146 S.E. 2d at 429. We therefore hold that lost income damages normally available under N.C.G.S. § 28A-18-2(b)(4)a. cannot be recovered in an action for the wrongful death of a stillborn child. To hold otherwise would require us to overrule *Gay*, which we believe was correctly decided.

We also hold that damages normally recovered under N.C. G.S. § 28A-18-2(b)(4)b. & c.—loss of services, companionship, advice and the like—will not be available in an action for the wrongful death of a viable fetus.[3] The reasons are the same as in the case of pecuniary loss. When a child is stillborn we simply cannot know anything about its personality and other traits relevant to what kind of companion it might have been and what kind of services it might have provided. An award of damages covering these kinds of losses would necessarily be based on speculation rather than reason.

The Court is not convinced that the pain and suffering of a fetus can ever be satisfactorily proved, but given recent advances in medical technology relating to the observation and treatment of life *in utero*, we cannot foreclose the possibility as a matter of law. Thus, damages for the pain and suffering of a decedent fetus are recoverable if they can be reasonably established. Medical and funeral expenses, as well as punitive and nominal damages, are just as susceptible of proof here as in any other tort case, and should be allowed where appropriate.

III.

[3]  Finally, we note that the parents of the fetus allegedly killed by defendants' negligence have filed suit to recover for personal injuries they allegedly suffered as a result of the same negligence. *DiDonato v. Wortman*, No. 84CVS4475 (Mecklenburg). This raises the possibility that defendants could be made to pay punitive damages to the parents in both actions. Such a result would be unjust and is certainly not what the legislature intend-

---

3. Recovery for the mother's mental anguish at having lost her child presumably will be available in a personal injury action brought in her own right. *See King v. Higgins*, 272 N.C. 267, 158 S.E. 2d 67 (1967).

ed. We can avoid this problem, however, by simply joining the action for wrongful death of the viable fetus with the parents' action for personal injuries.

This Court faced a similar situation in *Nicholson v. Hugh Chatham Memorial Hospital, Inc.*, 300 N.C. 295, 266 S.E. 2d 818 (1980). In that case, plaintiff alleged that her husband had been injured by defendant's negligence, and she sought damages for loss of consortium. Prior to our decision in *Nicholson* we had disallowed claims for loss of consortium brought by the wife. We had done so, in part, because we were

> concerned that to allow a wife's action for loss of consortium, particularly when the main component of that action was compensation for lost service, would allow double recovery. A husband, suing in his own behalf, would recover for loss of his services while a wife, suing for loss of consortium, would recover for loss of the selfsame services.

*Nicholson*, 300 N.C. at 300, 266 S.E. 2d at 821. In overruling an older decision and allowing the action for a wife's loss of consortium, we determined in *Nicholson* that the best way to avoid the problem of "double recovery" was to compel joinder of the wife's claim with any personal injury action brought by the husband. *Id.* at 303, 266 S.E. 2d at 823. The Court said: "The reasons for requiring joinder are sound. Not only does joinder avoid the problem of double recovery, it recognizes that, in a very real sense, the injury involved is to the marriage as an entity." *Id.*

In *Nicholson* there were, of course, two alleged victims—the wife and the husband—and therefore two alleged torts. In this case there are *three* alleged victims—the fetus, the mother and the father. Recovery of punitive damages in the wrongful death action would be related to the death suffered by the fetus, while recovery of punitive damages in the parents' personal injury suit would be related to injuries suffered by the mother and father.

This case is like *Nicholson*, however, in that the family unit allegedly has been injured by a single negligent act or course of conduct. As we have already noted, wrongful death actions are permitted not for the benefit of the decedent, but to compensate the decedent's survivors. The beneficiaries are the real parties in interest. *In re Ives Estate*, 248 N.C. 176, 102 S.E. 2d 807; *Daven-*

*port v. Patrick*, 227 N.C. 686, 44 S.E. 2d 203. Here, the recovery in both the wrongful death action and the parents' separate personal injury suit would go to the parents.

For the most part, the items of damage available in the wrongful death action and the parents' personal injury suit do not overlap. The decedent's funeral expenses, for example, are available only in the wrongful death action. *Boulton v. Onslow County Bd. of Educ.*, 58 N.C. App. 807, 295 S.E. 2d 246 (1982). Similarly, recovery for the mother's pain and suffering would be available only in the parents' lawsuit.

Punitive damages, however, would be available in both actions. If the actions are tried separately, defendants could be punished twice for a single act of negligence. The parents, moreover, would reap a windfall not contemplated by the legislature when it permitted actions for wrongful death. We therefore hold that plaintiff's claim for the wrongful death of a viable fetus must be joined with any claims based on the same acts of alleged negligence brought by the parents in their own right.

IV.

To summarize: The legislature does not appear to have directly considered the question presented in this case when it adopted and amended North Carolina's wrongful death statute. Therefore, it is the Court's obligation to construe the statute in a way that is consistent with both its language and the broad purposes it was intended to serve. An examination of that language and those purposes leads us to conclude that the death of a viable fetus falls within the purview of N.C.G.S. § 28A-18-2, and that this action must be allowed insofar as plaintiff seeks to recover damages that are not based on sheer speculation. Plaintiff's action for wrongful death must, however, be joined with any action based on the same facts brought by the decedent's parents.

Reversed and remanded.

Justice MARTIN concurring in part and dissenting in part.

I concur in the holding of the majority that a viable unborn child is a "person" within the meaning of the wrongful death statute, N.C.G.S. § 28A-18-2(b). On this issue, I deem it not inap-

propriate to set forth additional reasons that lead me to this conclusion.

In 1969 the General Assembly rewrote the wrongful death statute beginning with a preamble stating that "human life" is valuable. The legislature expanded the scope of recoverable damages to include pain and suffering of the decedent, loss of society, companionship, comfort, guidance, kindly offices and advice, and punitive damages. The revised statute thus contemplates that a much broader range of deaths will be compensable than under the earlier statute; that is, "person" now includes others than those who earn wages or those with easily provable monetary worth.

The public policy of this state as expressed by the legislature in our statutes recognizes that an unborn infant is a person. Significantly, an unborn infant, *in esse*, is "deemed a *person* capable of taking by deed or other writing any estate whatever in the same manner as if he were born." N.C.G.S. § 41-5 (1984) (emphasis added). *See also* N.C.G.S. § 29-9 (1984) (unborn infant can inherit property); N.C.G.S. § 31-5.5 (1984) (unborn child at testator's death can share in estate); N.C.G.S. § 33-2 (1984) (unborn child can have guardian appointed).

*State v. Forte*, 222 N.C. 537, 23 S.E. 2d 842 (1943), is also instructive. In *Forte* we held that an unborn infant has a "life capable of being destroyed" when it has "so far advanced as to be regarded in law as having a separate existence." *Id.* at 538, 23 S.E. 2d at 843.

A viable baby — one which has developed within its mother's womb to the point that it is capable of independent existence outside its mother's womb, Black's Law Dictionary 1404 (5th ed. 1979) (and cases cited therein) — clearly has an identity separate from its mother, medically and legally. The child has a separate physiological system; it is not a "part" or an organ of the mother but has an independent life.

The child here was well beyond full term and was obviously viable; therefore it had a separate and distinct existence and a life capable of being destroyed within the definition enunciated in *Forte*. If an unborn child has a life capable of being destroyed for the purposes of the criminal law, as in *Forte*, it has a life capable of being destroyed under the lesser civil standard of a wrongful

death action. Negligent destruction of such life must therefore be compensable in a wrongful death action. These manifestations of the public policy of our state are consistent with the decision of the United States Supreme Court in *Roe v. Wade*, 410 U.S. 113, 35 L.Ed. 2d 147, *reh'g denied*, 410 U.S. 959, 35 L.Ed. 2d 694 (1973), recognizing that a state has a compelling interest in protecting the life of an unborn child after viability.

The majority's recognition of a cause of action for wrongful death of a fetus is also in accord with the great majority of the jurisdictions that have considered this issue.

I must dissent, however, from the opinion of the majority with respect to damages. The majority correctly holds that a viable unborn fetus is a "person" within the meaning of the wrongful death statute, then inexplicably attempts to cut away part of the statutory damages provided within the statute. This the Court cannot do. The plaintiff in this wrongful death action is no different from any other plaintiff; the plaintiff is entitled to recover such damages as are proved in accordance with the law. The trial judge *may* rule that plaintiff has failed to prove one or more elements of damages as a matter of law, but it is not for this Court to bar plaintiff from *trying* to prove all damages recoverable under the statute.

As I stated with regard to the limitation of damages in *Jackson v. Bumgardner*, 318 N.C. 172, 347 S.E. 2d 743 (1986):

The better practice would be to allow the trial court in the first instance to address the issue of what damages are recoverable. The appellate division would then have a full evidentiary record upon which to make a proper analysis as to damages rather than attempting to formulate an abstract rule. The majority has decided damage issues that have not been presented to us upon an evidentiary record and which may never be so presented. Sound judicial discipline would dictate withholding such momentous decisions until all available evidence and arguments can be presented to the Court. Precipitous judgments are to be avoided.

*Id.* at 189, 347 S.E. 2d at 753 (Martin, J., concurring in part and dissenting in part). The legislature has defined the possible elements of damage recoverable in a wrongful death action and

must have intended that the same rule of damages apply to all such actions. It is not the prerogative of this Court to usurp a legislative function by rewriting the statute to change the rule of damages.

Nor can I adhere to the rule announced in the majority opinion that a wrongful death action based upon the death of a viable unborn fetus *must* be tried with any action the parents may have arising out of the fetal death. This is a matter better left to the discretion of the trial judge. There are many factors to be considered in deciding this question, such as the identity of parties and the negligent act or acts involved. Defenses available to defendant or defendants as to each plaintiff, time constraints within which to institute the different actions, the measurement of damages, and other factors, may vary. Protecting a defendant from paying double punitive damages on the same evidence can be accomplished on a case-by-case basis. The blanket rule required in the majority opinion would be at best unworkable and at worst unjust.

Justice MITCHELL joins in this concurring and dissenting opinion.

Justice WEBB dissenting.

I dissent. At the outset let me say that I would have no objection to allowing a wrongful death action for an unborn child if the Legislature had so prescribed. I do not believe the Legislature has done so and it is error for us to do it for them. The majority has then compounded the error by repealing a part of the statute they do not like.

The majority begins by denigrating legislative silence as a tool in statutory construction. It cannot add to the strength of this Court to use this canon of construction when we want to reach a certain result, *State v. Gardner*, 315 N.C. 444, 340 S.E. 2d 701 (1986), and ignore it when it suits our convenience. Whatever the majority thinks of this canon in general, I believe it is very helpful in this case. In *Gay v. Thompson*, 266 N.C. 394, 146 S.E. 2d 425 (1966), this Court held there could be no recovery for the wrongful death of an unborn child because there could be no proof of damage under the Act as then written. The General Assembly

then amended the Act to change the measure of damages. I believe we have to assume the General Assembly was aware of *Gay* when the Act was amended. They could very easily have defined person to include an unborn person but they did not do so. *Cardwell v. Welch*, 25 N.C. App. 390, 213 S.E. 2d 382, *cert. denied*, 287 N.C. 464, 215 S.E. 2d 623 (1975) and *Yow v. Nance*, 29 N.C. App. 419, 224 S.E. 2d 292, *cert. denied*, 290 N.C. 312, 225 S.E. 2d 833 (1976) were then decided. Both these cases hold there is no wrongful death claim for an unborn child. The General Assembly has not seen fit to change this rule for the last twelve years.

The majority says, "We cannot assume that our legislators spend their time poring over appellate decisions so as not to miss one they might wish to correct." I believe we have to assume the legislators were aware of *Gay* when they amended the Act and did not say persons includes unborn persons. If the canon of construction that legislative inaction means legislative approval has any validity, we have to assume that in such a high visibility field of law as this one the General Assembly has been aware of *Cardwell* and *Yow*. If, as the majority says, "the face of the wrongful death statute does not conclusively answer the question before us" we should use the best tool we have and affirm the Court of Appeals.

I believe the majority has committed further error by holding that although there may be a wrongful death claim for an unborn person, we shall not allow some of the damages for which the statute provides. This repeals a part of the statute by judicial fiat. I believe it is error to do so. If there are to be wrongful death claims for unborn persons, the plaintiffs should have whatever damages they may prove under the Wrongful Death Act.